PRESTON J. SATHER *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

January 29, 1889.

**Railway — "Wagon-Crossings"— Cattle-Guards.** — The term "wagon-crossings," as used in Gen. St. 1878, *c.* 34, § 54, requiring railroad companies to build and maintain "cattle-guards," refers to wagon roads used for public travel crossing railroads, and not to private ways or farm-crossings.

**Same—Farm-Crossings—Locks to Gates.**—The provision in Laws 1877, *c.* 98, § 4, that railroad companies may furnish land-owners with locks for gates at farm-crossings, is permissive, and not mandatory; and in case no such locks are furnished, the question of the negligence of the corporation in any particular case, as respects the opening or closing of such gates, or their being securely fastened, is open for investigation, and is not affected by the statutory provision referred to.

**Same—Negligence—Evidence.**—Evidence considered, and *held* insufficient to establish negligence on the part of the defendant in this case.

Plaintiff brought this action before a justice of the peace, to recover the value of a colt alleged to have been killed through the negligence of defendant. After judgment for plaintiff, the defendant appealed to the district court for Carver county, upon questions of law alone, where the judgment was affirmed by *Edson,* J., and the defendant again appealed.

*W. H. Norris,* for appellant.

*Peck & Brown,* for respondent.

VANDERBURGH, J.  1. The statute (Laws 1876, *c.* 24, amended by Laws 1877, *c.* 73,—Gen. St. 1878, *c.* 34, §§ 54, 57) requires all railroads "to build and maintain good and sufficient cattle-guards at all *wagon-crossings,* and good and substantial fences on *each side of such road.*"  And a failure to build and maintain cattle-guards and fences as above provided is to be deemed an act of negligence.  The term "wagon-crossing," used in the statute, refers to crossings for public travel on roads, highways, or streets.  *Greeley* v. *St. Paul, M. & M. Ry. Co.,* 33 Minn. 136, (22 N. W. Rep. 179.)  It means established

wagon roads intersecting railroads. The statute does not name or include "private ways" or "farm-crossings," so called. The former are to remain open, and are protected by cattle-guards and wing fences, while the adjacent farms or lands are required to be separated from the right of way by fences *on each side of such road;* and if farm-crossings are reserved or secured by adjacent land-owners for private convenience, the gates and bars for the openings are understood to be a part of the fence, and hence sufficient to protect stock, and keep it from going upon the track, except when taken across the same by or under the authority and direction of the owner; and the provisions of the statute as made do not reach such cases. *Brooks* v. *New York & Erie R. Co.*, 13 Barb. 594; *Cook* v. *Mil. & St. Paul Ry. Co.*, 36 Wis. 45. In other words, the statute requires railroad companies to fence along their right of way, where it can do so; but as it cannot fence across highways, the protection there required in order to keep cattle off the track is the maintenance of cattle-guards, and, in the absence of special or other statutory provisions than is provided in the chapter referred to, we think the road is fenced, as respects the farm-crossings, where safe and proper gates are erected and maintained.

2. Chapter 98, Laws 1877, is entitled "An act relating to fences and gates along railroad tracks, and for protecting the same." Sections 1 and 2 make it unlawful for any person to break or injure any fence or gate along any railroad track, or to leave open any such gate so that cattle may stray thereon, or to permit any animal to stray thereon. And section 3 provides penalties for such offences. Section 4 is as follows: "Whenever any gate shall be erected by any railroad company at any farm crossing, for the exclusive use of any owner of land, such company may provide a lock for the same, and deliver the key to such owner, or the tenant or the occupant of such land; and if such gate shall thereafter be opened, whereby cattle or other animals shall get upon such railroad track, and be injured or killed, unless maliciously or wantonly done by such railroad company or its employes, such company shall not be liable to the owner of such injured animals for such damage." This provision, in case it is complied with, necessarily eliminates from the issue upon the trial of an action of this kind all questions of negligence on the part

of the defendant as respects any such gate being left open or unfastened. But if the company omit such precautions, the question of its negligence in that particular as well as others will remain open, and, in so far as it may be found to be the proximate cause of the injury complained of, its liability will remain unaffected by the statute in question.

3. The only remaining question in the case, then, is whether the plaintiff's loss in this instance is attributable to the negligence of the defendant. The theory of the plaintiff is, and the evidence tends to support it, that the colt in question escaped from the field of an adjoining proprietor into the field of one Wanke, from which, through a gate in the railroad fence, (made to accommodate the latter for a farm-crossing,) it escaped, in the night-time, upon the railroad track, and was killed. Besides the absence of cattle-guards and lock and key, the negligence complained of is "in not properly making and fastening the gate, and by the same being left open." Referring to the evidence, we find that there is no criticism of the gate except as to the want of lock or other secure fastening. The undisputed testimony is that the gate is "an ordinary railroad gate." "It is a board gate, — swinging gate." "The gate slides right in between two posts." "This was the only method of closing and fastening." "There was nothing to prevent any animal from pushing the gate open but the heft on the ground. The land descends towards the railroad." The gate was found open early in the morning, and the colt was found along-side the track, where it was killed by a train. There is no evidence, however, tending to show that the gate was opened in consequence of a defective or insecure fastening, or that it was pushed open by animals. The gate opens (that is, swings) into the field, and not outwardly towards the track, and when found open in the morning "it was swung up the hill," and wide open, showing that it had been opened and left open by some person. The evidence also shows that at 6 P. M. the 'night before "it was closed and well shut," by one of the section-men, who found it open at 7 next morning, when he resumed work. All the evidence there is explanatory of the manner in which the gate was opened is that of the owner of the field into which it opens, who swears that it was closed tight at

6 A. M.; "that he left it open, intending to return soon." The plain-tiff's evidence tends to show that the colt was killed at an earlier hour. Whether either is mistaken as to the time the colt came through the gate, if in fact it escaped that way, or whether he was let through at an earlier hour, in either case there is no evidence that it was the result of the negligence of the company.

Judgment reversed.