OMAHA & R. V. R. CO. v. JOHN H. SEVERIN.

[FILED SEPTEMBER 18, 1890.]

1. **Railroads**: FARM CROSSINGS: STATUTES CONSTRUED. Section 106 of chap. 16, Comp. Stats., construed, and *held*, that the "causeway or other adequate means of crossing," which railroad corporations are required to make and keep in repair, when any person owns land on both sides of any railroad, and when requested so to do, is an adequate means of crossing such railroad track and right of way by such owner on foot or horseback, with wagon or carriage, or with domestic animals under his control, but is not required to be adequate to the free passage of unherded cattle or other domestic animals wandering unrestrained from one side of the railroad to the other.

2. ———: ———: ———. Section 1 of chapter 72 construed, and *held*, that the railroad corporations to which the provisions of said section apply are required, under the penalty of the liabilities therein specified, to erect and maintain fences on both sides of their railroad "suitably and amply sufficient to prevent cattle, horses, sheep, and hogs from getting on the said railroad, ex-

cept at the crossings of public roads and highways, and within the limits of towns, cities, and villages;" that this includes the space on either side opposite to private or farm crossings of the railroad, at which points such corporations are required to make or leave openings in such fence with gates or bars to close and secure such openings ; but are not required to put in cattle guards at such private or farm crossings.

ERROR to the district court for Lancaster county.    Tried below before FIELD, J.

*John M. Thurston,* and *W. R. Kelley,* for plaintiff in error.

*W. M. Woodward, contra.*

Cases cited by counsel are referred to in opinion.

COBB, CH. J.

The plaintiff was the owner of a farm consisting of a square tract of 160 acres of land according to the government surveys.

The defendant, being engaged in constructing a line of railroad, and having the right to apply for an exercise of the power to condemn and use the right of way over and upon the plaintiff's land, upon the refusal of the owner of such real estate to grant the same for a price stipulated by the parties, applied to the plaintiff to purchase the real estate necessary for its right of way, and by mutual agreement and contract the defendant purchased of the plaintiff, and the plaintiff conveyed by deed to the defendant, in consideration of $240, "a strip of land through the southeast quarter of section 26, township 7, range 6 east, one hundred feet in width, being fifty feet on either side of the center line of the road of said company as located or to be located by the engineer of the said railroad company for the construction of the same," with a proviso for the rever-

sion of the land to the grantor, and his heirs, in case of the abandonment of the route by the railroad company.

Afterwards the defendant located its line and constructed its railway on and across the said tract, in a direction nearly north and south and nearly equally bisecting the same, leaving the dwelling house, barn, corral, and pasture and other outbuildings and well on the east half. As understood from the evidence, only fields and a calf pasture, and that uncertain, are on the west side of the railroad. A public road leading to the village of Firth forms the south boundary of plaintiff's land; also a public road on the east side about ten rods from the plaintiff's dwelling house. Before the conveyance of said right of way and the location of the railroad plaintiff had made and used a private road running east and west across his farm, and crossing the line afterwards occupied, by the railroad, some three or four rods south of the center of the quarter section tract; to use plaintiff's language, in crossing his farm from east to west on this particular track, "because he had to put in a culvert over a little draw."

Some time after defendant had constructed and operated its railroad line, the plaintiff served a notice requiring it to fence its track and right of way, "and put in the necessary cattle guards." The defendant thereupon erected fences on each side of its right of way, and at the point where the railroad crosses the private farm road, that being, as testified to by plaintiff, the most convenient place for a crossing, and doubtless pointed out by him to defendant as the point where he desired the crossing to be placed, made openings in the fence on either side, with gates, but placed no wing fences, nor constructed any cattle guards in its track. The defendant also planked the space between the rails so as to provide for its being crossed with wagons.

The plaintiff brought his action in the nature of *mandamus* to compel the defendant railroad company to put in cattle guards, including wing fences, so that gates might

be left open or removed and cattle allowed to pass from that part of the farm on one side of the railroad track and right of way to the other side of the same unattended and unwatched, without danger of their going upon the railroad track off of the said crossing directly, or of their first wandering off said crossing along the right of way, and thence getting upon the railroad track. Upon the trial there was evidence that one way from said crossing, about forty rods distant, there is a cut made by the railroad some seven or eight feet deep, and the other way the plaintiff had set out trees for a windbreak, near the railroad, which prevented trains approaching from either way being seen in time to enable the plaintiff to drive his cattle from one part of his farm across the railroad track to the other. The court found for the plaintiff, that the defendant is bound by law to maintain an adequate crossing at the point designated by plaintiff; that what is an adequate crossing is to be determined by the facts of the case; that in this case an adequate crossing is not provided without cattle guards to complete it; and there was a judgment that the defendant construct and put in place at the crossing in question, within thirty days from the date of the judgment, a good and sufficient cattle guard on both sides of the crossing, *said cattle guards to be of the kind usually built by defendant at such points,* etc., with judgment for costs.

The cause being brought to this court on error by the defendant, fairly presents the question whether any law or statute is in force in this state which makes it the duty of railroad companies to construct cattle guards at private or farm crossings. But one section of statute is cited by defendant in error, sec. 106, chap. 16, Comp. Stats. of Nebraska, as follows : " When any person owns land on both sides of any railroad, the corporation owning such railroad shall, when required so to do, make and keep in good repair one causeway or other adequate means of crossing the same." This chapter of the statutes is entitled " Corporations,"

and is divided into twenty-one subdivisions. The eighth, in numerical sequence, is entitled "Railroad Companies." The fifty sections composing it, including sec. 106, above quoted, were taken by the compiler from an act of the territorial legislature of Nebraska, entitled "An act to create and regulate railroad companies," approved February 8, 1864.

We are cited to no case where the language of section 106 has been construed, nor do I know of any. There is nothing in the context, or in any other section of the act, tending to indicate the sense or meaning in which the word "causeway" is there used; nor does the definition of it from dictionaries and cyclopedias give much assistance. Webster defines it: "A way raised above the natural level of the ground by stones, earth, timber fascines, etc., serving as a dry passage over wet or marshy ground, or as a mole to confine water to a pond or restrain it from overflowing lower ground," and such is substantially the definition of the Century dictionary, and of the cyclopedias. The words of the statute, " one causeway, or other adequate means of crossing the same," indicate the legislative judgment that a causeway, whatever it may be, when applied to a railroad, is an adequate means of crossing its track. If the section only applied to such a part of a railroad as is known as a fill, where the road-bed is raised by an embankment above the natural level of the land, it would be reasonably clear that the causeway intended was a raising of the cross-road adjacent to the railroad track with gradients on either side for the convenience of crossing with carriages, wagons, and by horsemen. And I can conceive of no other sense in which the language could have been used in the present instance. Surely the word is not to be confounded with *viaduct or bridge*, as that means of crossing a railroad could only be cheaply or economically used where there is a very deep cut, which is not common to railroads in this state. This section applies as well to uncultivated as to cul-

tivated land, and to that uninclosed as well as to that which is fenced. The ownership of land, on both sides of the railroad, gives the right to the *causeway*, or other adequate means of crossing, and not the ownership or possession of live stock by the land-owner. The right of an owner of land on both sides of a railroad to an adequate means of crossing from one part of the land to the other, doubtless within the meaning of the statute, implies the right of such owner to such means of crossing, with any domestic animals under his control. But a careful reading of the fifty sections of the sub-chapter, fails to indicate that it was in the legislative mind to provide for unherded animals wandering from one side of a railroad to the other. Neither cattle nor animals are mentioned in the statute, and, as we have seen, the ownership nor possession of cattle adds to the right of an owner of lands to adequate means of crossing; the conclusion is therefore not only logical but irresistible that a means of crossing that is adequate for one owner of land on both sides of a railroad is, in contemplation of the statute, adequate for all such owners. If not, then such adequacy depends upon the character of the railroad track and right of way between the lands of such owners, whether level, cut, or fill, not upon the use of the land on either side of the railroad, nor upon the possession of cattle by such owner.

There is one other provision of the statute applicable to this question: "An act to define the duties and liabilities of railroad companies," approved June 22, 1867. This act has been several times amended, but in so far as its provisions are involved in the present question they remain unchanged, and the act now constitutes the first article of chap. 72 of the Compiled Statutes of 1889. The object of this act was to compel railroad companies to fence their lines, defining their duties in that respect, and their liabilities in case of failure to perform them. By its provisions every railroad company whose lines, or any part thereof,

were then open for use, was required, within six months after the passage of the act, and every one formed, or to be formed, whose lines were not then open for use, within six months after the lines of such railroad should be open, to erect, and thereafter to maintain, fences on the sides of their said railroad, or the part thereof so open for use, suitably and amply sufficient to prevent cattle, horses, sheep, and hogs from getting on the said railroad, except at the crossings of public roads and highways, and within the limits of towns, cities, and villages, with opens or gates or bars at all the farm crossings of such railroads for the use of the proprietors of the lands adjoining such railroad, and that they should also construct, where the same had not already been done, and thereafter maintain, at all road crossings then existing, or thereafter established, cattle guards suitable and sufficient to prevent cattle, horses, sheep, and hogs from getting on to such railroad. The section further provides that so long as such fences and cattle guards shall be made, after the time therein prescribed therefor shall have elapsed, and when such fences and cattle guards, or any part thereof, are not in sufficiently good repair to accomplish the object for which the same was therein prescribed and intended, such railroad corporation and its agents, should be liable for any and all damages which should be done by the agents, engines, or trains of any such corporation to any cattle, horses, sheep, or hogs thereon; and also, that when such fences and guards shall have been fully and duly made and shall be kept in good and sufficient repair, such railroad corporation should not be liable for any such damages unless negligently or willfully done.

By the above provisions railroad companies are required, under the penalty of certain liabilities, to erect and maintain, on the sides of their respective railroads, fences suitably and amply sufficient to prevent live stock, of the kind therein specified, " from getting on the said railroad except

at the crossings of *public roads* and highways and within the limits of towns, cities, and villages." It cannot be claimed that this language will bear the construction that private or farm crossings might be left unfenced, and cattle guards or pits dug in the bed of the railroad on each side of such crossing substituted for a fence. The sole object of the required fence is to prevent cattle, horses, sheep, and hogs from getting on the railroad; but the necessities of travel required that an exception should be made as to public roads and highways. No such necessity was recognized by the framers of the statute in regard to private or farm crossings; so that by the letter of the law such fence was required to be erected "suitable and sufficient to prevent cattle, horses, sheep, and hogs from getting on the said railroad" at private or farm crossings. In other words, the entire railroad is required to be fenced with the exception of certain places; private or farm crossings not being within such exception, the general requirement to fence applying to them.

But the words of the statute, immediately following those last above quoted, must be considered in connection therewith. They are, "with opens, or gates, or bars, at all the farm crossings of such railroads for the use of the proprietors of the lands adjoining such railroads, and shall also construct, where the same has not already been done, and hereafter maintain, at all railroad crossings now existing, or hereafter established, cattle guards suitable and sufficient to prevent cattle, horses, sheep, and hogs from getting to such railroad." That part of the sentence quoted, consisting of the first twenty-six words, and which should be followed by a semi-colon, but is not, if taken literally would be satisfied by the erection of a fence with either an open or opening without either gate or bars, or a gate or bars without an opening at the farm crossings. But when these words are considered in connection with the remainder of the section, and especially the purpose and object of the statute requir-

ing railroads to be fenced, and also in view of the purpose and object of requiring either opens, gates, or bars at farm crossings, it seems clear to my mind that the statute requires an opening in the fence, and such opening to be secured by a gate, or bars, at all farm crossings. Were there any ground for doubt as to the above construction, such doubt must, I think, be satisfied by the consideration of the residue of the section preceding the proviso. This part of the section requires all railroad corporations, when the same had not already been done, to construct, and thereafter to maintain, at all road crossings, cattle guards suitable and sufficient to prevent cattle, horses, sheep, and hogs from getting on to such railroad. Thus the statute recognizes a clear distinction between "road crossings," which words are evidently here used as the equivalent of "public roads and highways," as designated in the forepart of the section, and farm crossings. In the one case it requires the construction of cattle guards, and in the other opens, gates, or bars, or, as we have seen, openings in the fence secured by gates or bars.

Neither the time nor space at my disposal will admit of an exhaustive review of the cases decided under statutes similar to that of ours. Some reference to them, however, is deemed necessary. A statute of the state of New York was enacted in 1850, entitled "An act to authorize the formation of railroad coporations and to regulate the same," a part of one section of which I quote:

"Sec. 44. Every corporation formed under this act shall erect and maintain fences on the sides of their road, of the height and strength of a division fence required by law, with openings, or gates, or bars therein, and farm crossings of the road for the use of the proprietors of lands adjoining such railroad; and also construct and maintain cattle guards at all road crossings suitable and sufficient to prevent cattle and animals from getting on to the railroad."

Under this statute the case of *Brooks v. N. Y. & Erie R.*

*Co.*, 13 Barb., 594, arose, which was an action to recover for the killing of two cows of the plaintiff by the engine and cars of the company upon the railroad track. The cattle had entered upon the right of way and track of the railroad through a gate in the fence, between the right of way and the grounds of a third person, which gate had been habitually left open. The plaintiff claimed to recover on the grounds of the absence of fences and of cattle guards at said point, which was a private or farm crossing. The opinion of the supreme court, not a court of last resort, was delivered by Mr. Justice Shankland. After discussing two points, not necessary to be noticed here, the opinion proceeds :

"I am also of the opinion that the true reading of the section does not require the company to construct and maintain cattle guards at *farm* crossings of the road, but only at *road* crossings. The first clause of the section before the period (semicolon, in fact) relates to farm crossings only ; and the last clause relates to public crossings only.

"The cattle guard was thought not necessary at farm crossings where fences, gates, or bars would be sufficient to keep cattle within the adjoining fields, except when driven across by the owners ; but road crossings, where cattle running at large in pursuance of town regulations, or other lawful cause, were liable to pass in and upon the track of the railroad, required the additional protection afforded by the cattle guards mentioned in the statute."

The judgment for the plaintiff in the lower court was reversed.

The above act was amended in 1854, by which sec. 44 of the original act was substantially re-enacted as sec. 8 of the amendatory act. The language of the two sections is so nearly identical as to render the reproduction of the second as quite superfluous. Under the amendatory act the case of *Jones v. Seligman.*, 81 N. Y., 190, was

brought to the court of appeals. ,This was a bill in equity against the defendants as acting trustees of the bond-holders of a railroad company, asking that the defendants be adjudged to specifically perform the duties imposed upon them by law, in respect to the matters set forth, and that they be required to build and maintain fences on each side of the lands taken by them from the plaintiff for railroad purposes, and described in the complaint, on which their railway is constructed through the plaintiff's farm, in the manner required by law, and also a farm crossing under said railroad.

After the above statement of the case, the opinion of the court by Mr. Justice Miller continues: "Section 8 of the general railroad act [chapter 282, Laws of 1854] requires that every railroad corporation    *    *    *    shall, before the lines of such railroad are opened, erect, and thereafter maintain, fences on the sides of their roads, of the height and strength of a division fence, as required by law, with openings, or gates, or bars for the use of the proprietors of the land adjoining such railroad, and to construct and maintain cattle guards at all said crossings, and declares that so long as such fences and cattle guards shall not be made, and when not in good repair, the corporation and its agents shall be liable for all damages ; and when such fences and cattle guards shall have been made and kept in good repair, such corporation shall not be liable for any such damages, unless negligently and willfully done." The learned judge then goes on to construe the statute, holding that it imposes upon railroad corporations the duty of putting in cattle guards at all farm crossings, and that in the case before him the plaintiff was entitled to a crossing under the railroad.

It will be observed that the opinion only quotes a part of the first sentence of the section. The quotation stops at a comma, and that which follows is only a construction placed upon the balance of the sentence, and with all due

respect to the judge who wrote, and the court which adopted, the opinion, I must say that such construction was not justified by the language of the sentence. The succeeding words are, to continue the quotation where it stops in the opinion, "and shall also construct, where the same has not already been done, and hereafter maintain, cattle guards at all road crossings suitable and sufficient to prevent cattle, horses, sheep, and hogs from getting on to such railroad."

This opinion, being thus so manifestly based upon a misconception of the statute, thus construed, cannot be received as an authority by this court.

The Compiled Statutes of the state of Missouri (1879) article 2, section 809, provide that "every railroad corporation * * * shall erect and maintain lawful fences on the sides of the road where the same passes through, along, or adjoining inclosed or cultivated fields, or uninclosed lands with openings and gates therein, to be hung and have latches or hooks, so that they may be easily opened and shut at all necessary farm crossings of the road, for the use of the proprietors or owners of the land adjoining such railroad, and also to construct and maintain cattle guards, where fences are required, sufficient to prevent horses, cattle, mules, and all other animals from getting on the railroad; and until fences, openings, gates, and farm crossings and cattle guards, as aforesaid, shall be made and maintained, such corporations shall be liable in double the amount of all damages which shall be done by its agents, engines, or cars to horses, cattle, mules, or other animals on said road, or by reason of any horses, cattle, mules, or other animals escaping from or coming upon said lands, fields, or inclosures, occasioned in either case by the failure to construct or maintain such fences, or cattle guards," etc. Under this statute arose the case of *Dent v. The St. Louis & Iron Mountain Railway Company*, 83 Mo., 496. This was an action for the recovery of double damages for stock killed by a train of cars in consequence

of the alleged failure of the road to construct cattle guards at plaintiff's farm crossing. From a judgment of the circuit court for the plaintiff the cause was taken to the supreme court, on appeal, and reversed. The opinion, by Chief Justice Henry, held that the statute did not require the construction of cattle guards at farm crossings, citing with approval the decision in *Brooks v. N. Y. & E. R. Company*, *supra*.

The Revised Statutes of the state of Illinois (1875) contained the provision as a part of chap. 114, sec. 37, * * * "That every railroad corporation shall * * * erect, and thereafter maintain, fences on both sides of its road, or so much thereof as is open for use, suitable and sufficient to prevent cattle, horses, sheep, hogs, or other stock from getting on such railroad (except at the crossings of public roads and highways, and within the limits of cities and incorporated towns and villages), with gates or bars at the farm crossings of such railroad, which farm crossings shall · be constructed by such corporation when and where the same may become necessary for the use of the proprietors of the lands adjoining such railroads; and shall also construct, where the same has not already been done, and thereafter maintain, at all road crossings now existing, or hereafter established, cattle guards suitable and sufficient to prevent cattle, horses, sheep, hogs, and other stock from getting on such railroad," etc. Under this statute, the case of *P. P. & J. R. Co. v. Barton*, 80 Ill., 72, arose. In the court below, Barton sued the railrway company for the value of stock belonging to him that had been killed by the engine and cars of the defendant at two different times and places. One of the animals for which the plaintiff recovered was killed in the town of lower Peoria, at a point where it was not the duty of the railroad company to have fenced its track. I quote from the opinion of the supreme court by Chief Justice Scott, that "the other stock was killed on the defendant's road where it passes through a

common field, consisting of several square miles, owned by different persons, some of whom resided therein, and was fenced only on the outside.    The railway company, although its road had been open for use more than six months, had not fenced its track entirely through the inclosure.    Within the limits of this common field, and near where the stock was killed, there was a crossing which defendant insists was a 'public road crossing,' and that the company could not lawfully fence across it.    It was used principally by parties residing within the inclosure, and was not a public road in any just sense; but if it was, it would not release defendant from liability for the stock killed near that point.    The stock was not killed exactly on the crossing.    Had it been a public crossing, it would have been the duty of the company to have placed 'cattle guards' there to prevent stock from getting upon the track; and if a private 'farm crossing,' as it really was, it was the duty of the company to place there bars, or gates, for the protection of stock that might lawfully run at large within the common field.    The company had erected neither 'cattle guards' nor 'bars or gates,' and it was therefore clearly liable for the stock killed."    The judgment was reversed because the plaintiff had been allowed to recover also for one animal killed when, under the declaration and proof in the case, there was no liability on the defendant; otherwise it would have been affirmed.

The General Statutes of the state of Minnesota (1878), at chap. 34, secs. 54-5, provide that "all railroad companies in this state shall, within six months from and after the passage of this act, build, or cause to be built, good and sufficient cattle guards at all wagon crossings, and good and substantial fences on each side of such road.

"Sec. 55. All railroad companies shall be liable for domestic animals killed or injured by the negligence of such companies; and a failure to build and maintain cattle guards and fences, as above provided, shall be deemed an act of negligence on the part of such companies.".

In the case of *Sather v. Chicago, Milwaukee & St. Paul R. Co.*, 40 Minn., 91, in the opinion of the court, by Judge Vanderburgh, this statute is construed that *wagon crossings* "means established wagon roads intersecting railroads. The statute does not name or include 'private ways,' or 'farm crossings, so called. The former are to remain open and are protected by cattle guards and wing fences, while the adjacent farms or lands are required to be separated from the right of way *by fences on each side of said road;* and if farm crossings are reserved or secured by adjacent land-owners for private convenience, the gates and bars for the openings are understood to be a part of the fence, and hence sufficient to protect stock and keep it from going upon the track, except when taken across the same by or under the authority and direction of the owner; and the provisions of the statute as made do not reach such cases. In other words, the statute requires railroad companies to fence along their right of way where it can do so, but it cannot fence across highways, the protection there required, in order to keep cattle off the track, is the maintenance of cattle guards; and, in the absence of special or other statutory provisions than is provided in the chapter referred to, we think the road is fenced, as respects the farm crossings, where safe and proper gates are erected and maintained." The court cites the cases of *Brook v. N. Y. & E. R. Co., supra,* and *Cook v. Milwaukee & St. Paul R. Co.,* 36 Wis., 45. The judgment for the plaintiff in the lower court was reversed.

An act of the legislature of the state of Wisconsin, entitled "An act in relation to railroads and the organization of railroad companies," approved March 22, 1872, provided sec. 30, that "every railroad company or other party having the control or management of a railroad, the whole or any part of which shall be located in this state, shall and is hereby required to erect and maintain good and sufficient fences on both sides of such road (depot grounds excepted)

of the height of four and a half feet, with openings, or gates, or bars therein, and suitable and sufficient farm crossings of the road for the use of the proprietors of the lands adjoining such railroad ; and also construct and maintain cattle guards at all highway crossings to prevent cattle and other animals from getting on to such railroad." It is further provided that until such fences and cattle guards shall be constructed, such railroad company, or other party, should be liable for all damages done by the agents or engines to cattle, horses, or other animals thereon ; and it was further provided that when such fences should be duly made and maintained the railroad company should not be liable for any such damages unless willfully or negligently done.

In the case of *Cook v. M. & St. P. R. Co.*, *supra*, the supreme court in the opinion by Judge Lyon construes the said statute, from which opinion I quote: "The only negligence which the complainant imputes to the defendant is the failure to put in the additional cattle guard; and the loss of or injury to the horses of the plaintiff is attributed solely to the absence thereof. The action is predicated upon the hypothesis that the defendant was under a legal obligation to put in the cattle guard, and hence is liable for all damages suffered by the plaintiff in consequence of its neglect to do so. Unless this hypothesis is correct, the complaint fails to show a cause of action against the defendant. The controlling question is, therefore, was the defendant under a legal obligation to put in such cattle guard? The complainant does not allege that the defendant ever agreed to do so, but it is argued that this is a public duty, the performance of which is obligatory upon the defendant without any such agreement. It is quite true (and the court has so held) that the defendant, as lessee in possession of the railroad, holds it subject to all duties imposed on its lessor for the benefit and protection of the public. (*McCall v. Chamberlain*, 13 Wis., 637.) But the

extent of such public duty in respect to cattle guards is fixed and determined by the statute on that subject, which does not require railway companies to construct cattle guards at farm crossings, but only highway crossings"— citing the statute as above. The judgment of the lower court overruling a demurrer to the complaint was reversed.

The Indiana decisions, while in line with the cases cited, are not considered as authority in this state; the statute of that state in regard to the duty of railroads to fence their lines being so different from our own.

The only cases cited by either party in the briefs of counsel, in the case at bar, are *Boggs v. C., B. & Q. R. Co.*, 6 N. W. Rep., 744, and *Gray v. Burlington & Mo. R. Co.*, 37 Ia., 119. The decisions and opinions in these cases are founded upon sec. 1936 of the Code of Iowa, that "when any person owns land on both sides of any railway the corporation owning the same shall, when requested so to do, make and keep in good repair one cattle guard and one causeway or other adequate means of crossing the same, at such reasonable place as may be designated by the owner." (Iowa Code, vol. 1, p. 490.)

The cases cited, as well as others of the supreme court of Iowa, decided under the above law, hold that it is the duty of railroad companies, under the circumstances contemplated by the language of the section, to put in cattle guards when requested so to do by the owner of lands situated on both sides of the railroad. I do not doubt the correctness of such holdings, but the statute under which they were made is so radically different from our own that they cannot be followed here.

I therefore reach the conclusion that the provisions of our statute above quoted, either by their language analyzed and fairly construed, or in the light of the construction placed upon similar statutes by the courts of other states, did not impose upon the defendants the duty of putting in cattle guards at the private or farm crossings on the plaint-

iff's land; and that the findings and decree of the district court are unsustained by the law and the facts of the case. The judgment of the district court is reversed and the cause is dismissed.

REVERSED AND DISMISSED.

NORVAL, J., concurs.

MAXWELL, J., dissenting.

Being unable to concur in the decision of the majority of the court, I deem it my duty to state the reasons for such non-concurrence. The plaintiff's railway runs between the defendant in error's residence and the public road, and he has applied under the statute to require the company to leave an open way between his residence and the public road. On the trial of the cause in the court below judgment was rendered in his favor, from which the railway company brings the cause into this court.

Sec. 106, chap. 16, Compiled Statutes, provides: "When any person owns land on both sides of any railroad the corporation owning such railroad shall, when required so to do, make and keep in good repair one causeway or other *adequate* means of crossing the same."

Sec. 1, art. 1, chap. 72, Compiled Statutes, provides: "That every railroad corporation whose lines of road or any part thereof is open for use, shall, within six months after the passage of this act, and every railroad company formed or to be formed, but whose lines are not now open for use, shall, within six months after the lines of such railroad or any part thereof are open, erect, and thereafter maintain, fences on the sides of their said railroad, or the part thereof so open for use, suitably and amply sufficient to prevent cattle, horses, sheep, and hogs from getting on the said railroad, except at the crossings of public roads and highways, and within the limits of towns, cities, and villages, WITH

OPENS, or gates, or bars at all the farm crossings of such railroads for the use of the proprietors of the lands adjoining such railroad."

These statutes are *in pari materia* and are to be construed together.   It will be observed that, under sec. 106, chap. 16, the railway company is required, when requested so to do, to make and keep in good repair one causeway or other adequate means of crossing the railway.   The compound word "causeway" appears to be derived from the Latin words *via calciata*—a way paved with limestone.   The present meaning of the word is a way raised above the natural level of the ground by earth, stones, etc., and when applied to a railway crossing it evidently means a suitable passage way across the track and right of way.   If it would be inconvenient to construct a causeway, then the railway company must provide other adequate means of crossing the track and right of way.   Sec. 1 of chap. 72 requires farm crossings of railroads to be *with opens*, gates, or bars. There are three classes of cases therefore provided for by statute and the question of what is an adequate crossing is a question of fact, considering all the circumstances of each case.   If a crossing is but little used, then bars may be sufficient and would be an adequate provision.   If the crossing is used to a greater extent, then gates may be sufficient, but if the crossing is in constant use—as where the railway intervenes between the public road and the residence of the land-owner, then an adequate crossing would be an open way.   The words "with opens" are evidently designed to apply to cases of that kind, otherwise they have no meaning whatever.

Railways have become a matter of public necessity, and under the statutes of this state there is but little restriction upon the right of a railway corporation to construct roads wherever its inclination may suggest.   From the necessity of the case the property of private individuals must sustain injury by the running of such roads.   This, however,

is borne by the land-owners because of the public necessity for railways.   In many cases it is unavoidable in construct-ing the roads to cut off access from the highway to the residence of the land-owners.   The law, therefore, has provided a safeguard in the land-owner's favor and re-duces his inconvenience and damage to his property to the minimum by requiring the company to furnish adequate means of crossing the railway and access to the public road.   And where gates or bars would not furnish the adequate conveniences, then the company must leave an open way so that the owner of the land may pass and re-pass without the delay and danger incident to taking down and putting up bars or opening or shutting gates.   The trifling cost to the company of putting in a crossing of that kind is as nothing compared to the benefit derived by the occupier of the land.   It would be intolerable to re-quire a land-owner, whose land was cut off from communi-cation with the public road and who had occasion to cross the railway many times each day, to open and shut gates each time that he crossed the same.   His rights should be considered as well as those of the railway company. No person would desire to purchase a farm on which to reside where it was necessary to open and shut two gates and cross a railway track in order to reach the dwelling house; and such a farm would be practically unsalable at the price of lands adjoining not intersected by a railway. Compared to the loss of the land-owner the expense of the company in maintaining an open way for his convenience is but a trifle, and it is but reasonable to suppose that such crossing was within the contemplation of the parties when the right of way was acquired.

The court below found that the open way was the only adequate means of crossing, and this court cannot say, as a matter of law, that such way is not required.   The words "with opens" are entirely ignored in the majority opin-ion, although they evidently refer to a class of cases not

22

provided for where gates or bars would be a sufficient means for a farm crossing.

The judgment of the court below in my view is right and should be affirmed.