WHITE v. MISSOURI, K. & T. RY. CO. *et al.*

No. 419.   Opinion Filed May 10, 1910.

Rehearing Denied July 6, 1910.

(110 Pac. 48.)

1.   RAILROADS—Private Crossings—Right of Property Owner. Under section 129, art. 9, c. 18, par. 1058, Wilson's Rev. & Ann. St. Okla. 1903, any person owning land on both sides of any railroad is entitled to have constructed and kept in good repair by the corporation owning such railway one safe and adequate means of crossing the same.

2.   RAILROADS—Private Crossings—Establishment—Hearing.   In the establishment of such crossings, neither the owner of the land nor the railway corporation has the right to arbitrarily fix either the kind of crossing or its location. When the parties cannot agree, these matters should be determined on the evidence by a jury on proper instruction. On a hearing to determine them, there should be taken into consideration not only the danger and expense involved in the establishment of any particular crossing, but also the reasonable necessities and convenience of the landowner; and such a crossing and place should be selected as will best serve the interests of the latter, unless

the danger or expense necessarily incurred or involved would render the same unreasonable.

3.    SAME—Burden of Proof. In a case where the owner of land on both sides of a railroad brings mandamus to have a crossing made of a particular kind and at a specified place, the burden is upon him to show the same to be the only kind and place reasonable when all the relevant material facts, both as to the railroad and his land, are given due consideration.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; G. W. Clark, Judge.*

Mandamus by Julian White against the Missouri, Kansas & Texas Railway Company and another. A demurrer to the evidence was sustained, and plaintiff brings error. Reversed and remanded, with instructions.

*Jas. L. Brown,* for plaintiff in error.—Citing: *Jones v. Seligman,* 81 N. Y. 190; *Wademan v. Albany R. Co.* 51 N. Y. 568; *Boggs v. Chicago R. R.,* 6 N. W. 744; *Sheridan v. Atchison, etc., Ry. Co.,* 56 Mo. App. 68; *Railway Co. v. Allen,* 22 Kan. 285; *Chalcraft v. Louisville, etc., Ry. Co.,* 113 Ill. 86; *Dubbs v. Philadelphia R. R.,* 23 Atl. 883; *Buffalo Stone & C. Co. v. Delaware L. & W. Co.,* 7 N. Y. Supp. 604; *Beardsley v. Lehigh Val. R. R.,* 20 N. Y. Supp. 458; Elliott on Railroads (2d Ed.) vol. 3, secs. 1144, 1145, 1147.

*Clifford L. Jackson* and *DuMars & Vaught,* for defendant in error.—Citing: *Omaha & R. V. R. Co. v. Severin,* 30 Neb. 318; *State v. Chicago, etc., Ry. Co.,* 86 Iowa, 310; *State ex rel. v. Burlington, etc., Ry. Co.,* 99 Iowa, 505; *Curtis v. Chicago, etc., Ry. Co.,* 62 Iowa, 418; *Schrimper v. Chicago, etc., Ry. Co.,* 115 Iowa, 35; *Missouri, etc., Ry. Co. v. Chenault* (Texas) 60 S. W. 55.

DUNN, C. J. This case presents error from the district court of Oklahoma county, and is an action of mandamus brought by plaintiff in error as plaintiff against defendants in error for the purpose of securing the establishment of an undergrade crossing on his farm. The case was tried to a jury and at the conclusion of plaintiff's evidence the court sustained a demurrer thereto, and

plaintiff has brought the case to this court for review on petition in error and case-made.

Counsel for defendants insist that the brief of plaintiff should be stricken from the files and the judgment affirmed by reason of the fact that it fails to comply with rule 25 of this court, in that it contains no specifications of error separately set forth and numbered with the authorities relied on. The brief is certainly subject to criticism, and the rule invoked was made to secure an orderly presentation of the questions upon which appellants rely in this court, and was made to be observed, and, when observed, is of great assistance to the court. An inspection, however, discloses that the reliance of counsel is on the alleged error of the court in overruling his motion for new trial, and the motion itself is set out at length in the brief, and we are able to fairly gather therefrom the claims which are sought to be presented. Hence we do not in this instance sustain the motion made.

The statute involved (section 129, art. 9, c. 18, par. 1058, Wilson's Rev. & Ann. St. Okla. 1903) is as follows:

"When any person owns land on both sides of any railroad, the corporation owning such railroad shall, when required to do so, make and keep in good repair one causeway or other safe and adequate means of crossing the same."

Under this statute, the corporation is required to make and keep for the benefit of the landowner whose property it crosses one causeway or other safe and adequate means of crossing. The Supreme Court of Nebraska construing a statute similar to this in the case of *Omaha & R. V. Ry. Co. v. Severin,* 30 Neb. 318, 46 N. W. 842, speaking of the word "causeway", said:

"The words of the statute, 'one causeway, or other adequate means of crossing the same,' indicate the legislative judgment that a causeway, whatever it may be, when applied to a railroad, is an adequate means of crossing its track."

This word "causeway," as used in this statute, adds but little if anything to the meaning of the balance of the section, and simply means, as is seen, an adequate means of crossing the track. It is

the contention of plaintiff that no adequate means of crossing the track may be made on his farm except by an undergrade crossing such as he seeks to secure by this proceeding. It appeared on the trial of this cause that a crossing had already been established over the track by the company, but that it was such a crossing that wagons, carriages, or other vehicles could not pass, and was used by the occupants of the farm solely for the passage of loose cattle and horses. On the trial defendants offered to make another crossing at a different point for plaintiff, and contended that it would meet the terms of this statute. This was rejected by plaintiff. It is contended by counsel for plaintiff, and admitted by counsel for defendant, that neither party has the right to arbitrarily designate the point of the crossing, which appears to be in accord with the holding of practically all the courts. The duty imposed on a railway company is statutory, and we have observed but slight, if any, difference in the construction placed on the various statutes by the courts of the states where they have been involved. Some of the statutes and holdings may be noted as follows:

The Iowa statute provides, in substance, that the railroad company shall keep in repair one cattle guard and one causeway, or other adequate means of crossing the track at such reasonable place as may be designated by the owner. Under this statute, the Supreme Court of Iowa in the case of *State v. B. C. R. & N. Ry. Co.*, 99 Iowa, 565, 68 N. W. 819, held, in substance, that each case must be determined by its own facts; that, under the law, the owner is entitled not to the most convenient or profitable means of crossing, but adequate means, and that in determining what are adequate means of crossing consideration must be given to the purpose for which the same is to be used, the rights of the respective parties, and all circumstances tending to show what is reasonable in the premises.

The statute of Illinois provides that every railroad corporation shall provide farm crossings which shall be constructed by such corporation where and when the same may be necessary for the use of

the proprietors of the lands adjoining such railroads. In the consideration of this statute, the Supreme Court of that state in the case of *Chalcraft v. L., E. & St. L. R. Co.*, 113 Ill. 86, said:

"In giving construction to the statute, it is quite evident it could not have been intended the interests of the landowner or occupant are alone to be consulted, for the question also affects the interests of the railroad company and the public. It would not be reasonable to suppose that it was contemplated that a railroad company should be compelled to erect and maintain a crossing at a point where the expenses of so doing would be very greatly in excess of all benefits that could result therefrom to the landowner or occupant."

The statute of New York requires every railroad corporation to maintain fences and crossings with cattle bars or gates for the use of the proprietors of the land adjoining such railroad. The Court of Appeals of that state said in dealing with the crossing involved in the case of *Jones v. Seligman et al., as Trustees, etc.*, 81 N. Y. 190, in the syllabus:

"The crossings are to be located and made having in view the rights of all the parties; and the railroad corporation is not vested with any such absolute discretion that its decision is final and conclusive."

In a discussion of the question, Justice Miller, who prepared the opinion for the court, said:

"The location of a crossing is to be made somewhat with reference to the needs, necessities, and convenience of the owner of the farm, and he is entitled to be reasonably and fairly accommodated. The circumstances are to be considered and the crossings should be located in view of all the surroundings, and according to the situation of the adjacent land. The railroad corporation in the exercise of its duty in providing farm crossings is not vested with any such absolute discretion or arbitrary power that its decision is final and conclusive, and cannot be reviewed or disturbed. While under the provisions of the general railroad act, requiring the corporation to erect farm crossings, etc., for the use of the proprietors of lands adjoining, the interest of neither party is alone controlling, the power must be exercised in a proper manner, having due regard to

the convenience of the owner of the land, and without subjecting him to needless and unreasonable injury. *Wademan v. A. & S. R. R. Co.,* 51 N. Y. 568. In the case cited where it was shown that the crossing was inconvenient for the plaintiff and not easy of access, and that the proper place for a farm crossing was at the point where the plaintiff desired it to be made, it was held that an action would lie to compel the defendant to build a suitable crossing. If the crossings made are insufficient in number, or improperly constructed, no reason exists why they should not be increased or improved so as to be made convenient and useful. While their number or the conveniences furnished should not be unlimited, extravagant, or burdensome upon the corporation, the owner of the land is entitled in a certain degree to the advantages to be derived from a proper and fair exercise of this power. The nature of his rights must depend greatly upon the situation of the farm, and must be determined with a due regard to the rules already laid down. The court may decide as to the kind and character of the crossing to be constructed, its necessity, and the place where it should be located."

The rule adduced from the authorities by Elliott is stated in his work on Railroads at section 1143 to be that:

"Where the statutes permit the railway company to select the place of crossing, it may do so, provided the location is a suitable one and such as not to subject the owner to great inconvenience. Whether the land owner or the railroad company has the right to select the place of crossing, the purposes of the crossing and the respective rights of each of the parties must be considered, and neither party will be allowed to arbitrarily select a place of crossing to the manifest injury or detriment of the other party."

And at section 1144 that:

"The crossing must be adequate, and an adequate means of crossing has been held to be such a crossing as would enable the owner to cross the track and right of way on foot or horseback, with wagon or carriage, or with domestic animals under his control. It is difficult to lay down any general rule that can apply to all cases for the adequacy of any particular private crossing must necessarily depend largely on its position and the surrounding circumstances."

Thornton on Railroad Fences and Private Crossings, at section 269, dealing with the same subject, says:

"The owner may select the place, unless fixed by the statute, subject to 'the limitation put upon his choice of location * * * that the place designated shall be a reasonable one.' The rights of both parties must be considered, so as to furnish a reasonably safe security for each."

And at section 273 he quoted approvingly from the case of *Wademan v. Albany, etc., R. R. Co.*, 51 N. Y. 568, which was noticed in the case of *Jones v. Seligman, supra.*

The rule announced by the authorities as declared in 33 Cyc. p. 307, is that:

"In the absence of statute or agreement to the contrary, the railroad company may designate the location of the crossing, but the landowner is entitled to be reasonably and fairly accommodated, and the railroad company must consider his rights, and cannot so locate the crossing as to subject him to needless and unreasonable injury or inconvenience."

The foregoing authorities in our judgment declare the rule justified by the terms of our statute. With this for our guide we will take up for consideration the question of whether the evidence contained in the record was sufficient to reasonably sustain a verdict had one been returned by a jury finding that the undergrade crossing desired by the plaintiff was the only reasonable one which could be provided when all of the circumstances and surroundings shown to exist in this case are properly considered, for, as was said by Justice Miller in the case of *Jones v. Seligman, supra*:

"The right to a crossing under the track was a necessity if, for sufficient reasons, a construction over the surface of the road was not practicable, or would not answer the purposes intended."

The following plat will present a better understanding of the facts presented than could be had from any description:

1. Cross roads.
2. Where undergrade crossing is asked.
1 to 2. Railroad grade or fill. 19 ft. high at 2.
3. Where railroad is level with ground.
4, 4. Where present crossing is located, about 1-3 way down bluff.
5, 5. Where railroad company proposes to locate crossing. Bench 5 to 7 ft. high.
6, 6. Borrow pits.

It will be noted that the tract of land on which the crossing is desired is the southwest quarter of the section, and that the railroad enters on the north side near the northeast corner, and follows a line diagonally across the land, making its exit at the southwest corner. It will also be noted that along the north line of the southeast 40 is a bluff approximately 30 feet in height, and the evidence shows that north of this bluff the railroad approaches it through a deep cut and emerges onto the lower land on a high fill which is from 18 to 20 feet above the surface of the ground. There is no claim made by either party that an adequate crossing could be made north of this bluff. The railway company has placed what might be termed a temporary crossing over the high fill mentioned, but this is conceded to be inadequate. It will also be noted that the plaintiff's

240     SUPREME COURT OF OKLAHOMA.

*White v. Missouri. K. & T. Ry. Co. et al.*

house is along the south line of the tract of land, and between his barn and the railroad. The point at which the crossing is desired is near the mouth of the old lane marked on the plat which had heretofore been used by plaintiff in driving his cattle to and from his pasture. The plaintiff sought to show that the height of the embankment of the low land was such that, had a crossing been made, he could not cross the same with heavy loads; that, if the crossing were placed at the point where the same was offered by the railway company, it would necessitate building a lane either through the field from his barn west past his house, or from the point near where the old lane strikes the raidroad down to the proposed crossing, and then another lane upon the other side of the track north to his pasture; that a crossing over the railroad south and west of the one proposed and where the road was sufficiently level to admit of its practical use, would afford no additional advantage over the public highways. The foregoing facts are all competent to be considered in determining the question as to whether plaintiff should prevail in this action, and under them alone, had the cause been submitted to a jury and a verdict for the plaintiff been returned thereon, there would not in our judgment have been wanting evidence reasonably tending to support it. Section 1147, Elliott on Railroads, says:

"Communication from one part of the landowner's property to another part, which has been cut off by a railroad right of way, is often provided for by passways and subways constructed under the tracks. As a rule, such passways and subways are more convenient for the landowner, and are at the same time much safer for the railway company, for collisions and injuries at such crossings are practically reduced to a minimum."

When the railway company constructed its line across the land of plaintiff, the law existed then as now, requiring it to furnish to him one "safe and adequate means of crossing the same." It took its grant with this burden and should discharge it. The crossing thus to be provided is intended to relieve to such reasonable extent as may be the inconvenience and damage done by the severance of the land. A crossing of any kind or character will necessarily carry

with it some burden or expense to the company, but this likewise was one of the considerations involved in the construction of the road. Although crossings of this character are termed private, there is a public consideration involved. They should be made at those places and in such a manner as will bring the least danger to the railway company in the operation of its trains consistent with the situation and the reasonable necessities and requirements of the owner. These conditions are not to be ignored, and, while having due regard for them, the convenience and necessity of the party for whose use the crossing is made should also be considered. Neither party can or should be permitted to act arbitrarily in the matter. The railway company should not be permitted to place the crossing at a point where it will afford no additional conveniences over that afforded by the public highways or where it can be used only as a great burden or inconvenience to the owner, nor, in turn, should the owner be permitted to arbitrarily place an unconscionable burden upon the railway company in the construction of an undergrade or any other kind of crossing; such a burden being one where the cost of the convenience would be greater than its value to the user.

All these considerations are proper matters to be submitted to a jury, and in the present case a comprehensive view of the entire record convinces us that this would be the proper procedure in this case, and the judgment of the trial court is therefore reversed and the case remanded, with instructions to set aside the judgment heretofore rendered and grant plaintiff a new trial.

All the Justices concur.