OMAHA & REPUBLICAN VALLEY RAILWAY COMPANY v. GEORGE W. MORGAN.

FILED MAY 15, 1894. No. 5217.

1. **Master and Servant**: RAILROAD COMPANIES: JOINT OCCUPANCY OF GROUNDS: LIABILITY FOR DAMAGES. Where two railroad companies jointly occupy the same property, such as depot grounds, switch yards, and tracks, each company is bound to exercise ordinary care to prevent injuring the employes of the other; and if an employe of one company, while in the discharge of his duties on such grounds and without negligence on his part, is injured by the negligence of the employes of the other company, such company is liable therefor.

2. **Negligence**: QUESTIONS FOR JURY. Issues as to the existence of negligence and contributory negligence, and as to the proximate cause of an injury, are for the jury to determine, when the evidence as to the facts is conflicting and where different minds might reasonably draw different conclusions as to these questions from the facts established. *American Water-Works Co. v. Dougherty*, 37 Neb., 373, followed.

3. ———: INSTRUCTIONS. The existence of negligence should be proved and passed upon by the jury as any other fact. It is improper to state to the jury a circumstance or group of circumstances as to which there had been evidence on the trial and instruct that such fact or group of facts amounts to negligence *per se*. At most, a jury should duly be instructed that such circumstances, if established by a preponderance of the evidence, are proper to be considered in determining the existence of negligence. *Missouri P. R. Co. v. Baier*, 37 Neb., 235, followed.

4. ———: MASTER AND SERVANT: QUESTIONS FOR JURY. Two companies, Omaha Company and St. Paul Company, jointly used and occupied a station with its switch yard and tracks in

the city of N.   A boy twelve years of age and his father were in the employ of the St. Paul Company as car cleaners.   Opposite where the boy was engaged in cleaning a car and beyond a long side track, filled at the time with cars, stood a tool house in which the employes of the St. Paul Company kept their tools.   The cars standing on the side track were no part of any train, nor were the cars at the time being switched on or off the side track.   The boy was directed by his father to take some oil cans to the tool house, to do which it was necessary for him to cross the side track.   He obeyed, crawling under the cars on the side track, left the cans at the tool house, and started to return to his work and father, crawling as before on his hands and knees, under the cars on the side track, and while thus under the cars the employes of the Omaha Company, without giving any signal or warning thereof, suddenly and with great force backed an engine and freight train against the cars standing on the side track, and injured the boy.   *Held*, (1) That the boy, being an employe of the St. Paul Company, was not a trespasser or mere licensee on the railroad grounds, but was rightfully there; (2) that the backing of the freight train and engine, without any signal or warning, against the cars standing on the side track was evidence of negligence on the part of the Omaha Company, but whether such act was or was not negligence, the time, place, and all the circumstances considered, was a conclusion for the jury; (3) that the boy's crawling under the cars standing on the side track was evidence of negligence on his part, but whether by such act, the time, place, and all the circumstances considered, he was guilty or not of contributory negligence was a conclusion for the jury.

5. **Negligence: INFANTS.**   The law does not require a child of tender years to exercise the same degree of prudence and care for its safety that is required of a person of mature age and discretion.   If such a child exercises the ordinary care and caution reasonable for one of its age and discretion it satisfies the requirements of the law.

ERROR from the district court of Madison county.   Tried below before POWERS, J.

The facts are stated by the commissioner.

*John M. Thurston, W. R. Kelly,* and *L. S. Wilson,* for plaintiff in error:

There was not sufficient evidence to support a verdict

for the plaintiff, and there was such contributory negligence on his part as should have precluded a recovery under proper instructions of the court. (*Sutton v. New York C. & H. R. R. Co.*, 66 N. Y., 243; *Lewis v: Baltimore & O. R. Co.*, 17 Am. Rep. [Md.], 521; *Northern C. R. Co. v. State*, 31 Md., 357; *Central Railroad & Banking Co. v. Dixon*, 42 Ga., 327; *Stillson v. Hannibal & St. J. R. Co.*, 67 Mo., 671; *O'Mara v. Delaware & H. C. Co.*, 18 Hun [N. Y.], 192; *Chicago & N. W. R. Co. v. Cass*, 73 Ill., 394; *Baltimore & O. R. Co. v. Depew*, 40 O. St., 126; *Rumpel v. Oregon S. L. & U. N. R. Co.*, 35 Pac. Rep. [Idaho.], 700; *Sweeney v. Old Colony & N. R. Co.*, 10 Allen [Mass.], 368; *Gaynor v. Old Colony & N. R. Co.*, 100 Mass., 208; *Frazer v. South & N. A. R. Co.* 1 So. Rep. [Ala.], 85.)

No negligent and dangerous practice can grow into a binding custom. (*Hill v. Portland R. Co.*, 55 Me., 438; *Central Railroad & Banking Co. v. Ryles*, 13 S. E. Rep. [Ga.], 584.)

While the instructions of the court in a general way, covered the law of negligence and contributory negligence of defendant and plaintiff, they were indefinite and vague as relating to the facts in the case at issue, leaving to the jury to form conclusions where they should have been instructed as a matter of law on vital points at issue. (*Toomey v. Southern P. R. Co.*, 24 Pac. Rep. [Cal.], 1076; *Burlington & M. R. R. Co. v. Wendt*, 12 Neb., 76; *Mulherrin, v. Delaware, L. & W. R. Co.*, 81 Pa. St., 375; *Reading & C. R. R. Co. v. Ritchie*, 102 Pa. St., 425.)

A minor is bound to assume all dangers within his comprehension which he voluntarily incurs. (Thompson, Negligence, p. 1181; 4 Am. & Eng. Ency. Law, p. 62; *Viets v. Toledo, A. A. & G. T. R. Co.*, 55 Mich., 120; *McGinnis v. Canada Southern Bridge Co.*, 49 Mich., 466; *Williams v. Churchill*, 37 Mass., 243; *Hathaway v. Michigan C. R. Co.*, 51 Mich., 253.)

*Wigton & Whitham, contra:*

Plaintiff had as much right to use and enjoy the privileges of the yard and side tracks as defendant.   He was not a trespasser, nor was he a mere licensee, but was there of right in the discharge of his duties, and defendant's employes owed to him the duty of active vigilance, of warning of some kind, before moving the cars among which he was passing while engaged in his work. (1 Thompson, Negligence, 461, 462; *Goodfellow v. Boston, H. & E. R. Co.,* 106 Mass., 461; *Noble v. Cunningham,* 74 Ill., 51; Pierce, Railroads, 275, 276, 349, 350; *Chicago & N. W. R. Co. v. Goebel,* 10 N. E. Rep. [Ill.], 369, 372; *Farley v. Chicago, R. I. & P. R. Co.,* 9 N. W. Rep. [Ia.], 230; *Pennsylvania R. Co. v. Backes,* 24 N. E. Rep [Ill.], 563.)

Because of the contract relations between the two railroad companies the defendant owed to the plaintiff the same duty to care for his safety that it owes to a passenger. (Patterson, Railroad Accident Law, p. 222.)

A railroad company must provide for a careful lookout in the direction that the train is moving, in places where people, and especially where children, are liable to be upon the track.   If they do not, and a person has been injured, then the company may, in the absence of contributory negligence, be held liable. (*Butler v. Milwaukee & St. P. R. Co.,* 28 Wis., 487; *Ewen v. Chicago & N. W. R. Co.,* 38 Wis., 613; *Farley v. Chicago, R. I. & P. R. Co.,* 9 N. W. Rep. [Ia.], 230; *Frick v. St. Louis, K. C. & N. R. Co.,* 5 Mo. App., 435; *Cheney v. New York C. & H. R. R. Co.,* 16 Hun [N. Y.], 415; *Townley v. Chicago, M. & St. P. R. Co.,* 11 N. W. Rep. [Wis.], 55; *Byrne v. New York C. & H. R. R. Co.,* 10 N. E. Rep. [N. Y.], 541; *St. Louis, A. & T. R. Co. v. Crosnoe,* 10 S. W. Rep. [Tex.], 342; *Swift v. Staten Island R. T. R. Co.,* 25 N. E. Rep. [N. Y.], 378; *Omaha & M. R. Co. v. McDaneld,* 31 N. E. Rep. [Ind.], 837.)

The relation of master and servant did not exist between

plaintiff and defendant, and plaintiff, therefore, did not assume the ordinary risks incident to the work of defendant. (*Pennsylvania R. Co. v. Backes,* 24 N. E. Rep. [Ill.], 563; Shearman & Redfield, Negligence, sec. 101.)

If two companies use the same railroad or station, each, however, employing its servants independently of the other, the one company is liable for the torts of its servants to those of the other in the same manner as to strangers. (Pierce, Railroads, 370; *Christman v. Philadelphia & R. R. Co.,* 21 Atl. Rep. [Pa.], 738; *Iltis v. Chicago, M. & St. P. R. Co.,* 41 N. W. Rep. [Minn.], 1040.)

There was no error in giving or refusing instructions. (*Johnson v. Missouri P. R. Co.,* 18 Neb., 690; *Atchison & N. R. Co. v. Bailey,* 11 Neb., 332; *Smith v. Sioux City & P. R. Co.,* 15 Neb., 583; *McGuire v. Chicago, M. & St. P. R. Co.,* 37 Fed. Rep., 54; *Cleveland Rolling Mill Co. v. Corrigan,* 20 N. E. Rep. [O.], 466; *Western & A. R. Co. v. Young,* 10 S. E. Rep. [Ga.], 197; *Swift v. Staten Island R. T. R. Co.,* 25 N. E. Rep. [N. Y.], 378.)

RAGAN, C.

George W. Morgan, a boy about twelve years of age, by his next friend, sued the Omaha & Republican Valley Railway Company (hereinafter called the ·" Omaha Company") in the district court of Madison county for damages for a permanent injury which he alleges he sustained through the negligence of said Omaha Company's agents and employes. Morgan had a verdict and judgment, and the Omaha Company brings the case here for review.

The evidence in the record establishes, and tends to establish, the following facts: The Omaha Company and the Chicago, St. Paul, Minneapolis & Omaha Railroad Company (hereinafter called the " St. Paul Company"), at the date of the injury of Morgan, owned and used jointly and in common a station, yards, and tracks in the city of Norfolk, the main track of said companies making one con-

tinuous line.   This main line passed northeast and south-west on a curve through a portion of the city of Norfolk and on the northwest side of the passenger station at that place.   Parallel to this main track, and a few feet north and west thereof, was a side or switch track, and parallel thereto was still another side track.   These side tracks were 1,630 feet in length.   At the time young Morgan was injured, about 7:30 o'clock in the afternoon of the 20th of June, 1890, these side tracks were filled with cars; but the cars were no part of any train.   At this time a train of the St. Paul Company occupied the main line near the east end of the station platform.   Nearly opposite this St. Paul train, northwest from it and beyond the two side tracks, stood a tool house of the St. Paul Company's in which the car clean-ers and repairers of that company kept their tools, oil cans, etc.   Some distance to the southwest of the station stood the engine house used by the Omaha and St. Paul Companies for the storing and cleaning of their engines.   There was an engine of the Omaha Company in the yards at this time; it was hauling a freight train, and just prior to the accident occupied with its train the main track between the station and the engine house.   It was necessary to remove this en-gine and freight train from its position on the main track between the engine house and station in order that the engine of the St. Paul Company, which was standing near the station on the main track, might be taken to the engine house.   The cars standing on the middle side track ex-tended some six hundred feet, or twenty car lengths, south-west from a line drawn from the tool house to the coaches of the St. Paul Company standing on the main track, and about the same distance north and east of such line. Young Morgan and his father were at that time, and had been for some three years, in the employ of the St. Paul Company as car cleaners in the city of Norfolk.   It was, amongst other things, their duty on the arrival of a train to dust and sweep and clean the coaches, to see that they

43

were supplied with coal, and the lamps filled with oil, etc. Immediately prior to the accident young Morgan and his father were engaged in cleaning out the coaches of the St. Paul Company, which had just arrived and were standing, as stated above, near the station on the main track. Young Morgan was assisting his father and working under his directions, but was in the pay and employ of the St. Paul Company. The father directed his boy to take some oil cans to the tool house mentioned above. The boy went across the side tracks, crawling under the cars thereon to the tool house, left his oil cans there, and attempted to return to his work, and while on his hands and knees crawling under the draw-bar or coupler of two of the freight cars standing on the middle track, the trainmen of the Omaha Company, having pulled the freight train off the main track, backed it up from the southwest towards the northeast against the cars standing on the middle track, and young Morgan was caught by the wheels and had both his legs broken. It was usual and customary, and even necessary for the employes in the yard, while engaged in car cleaning, oiling, and coaling cars, and such like duties, to pass under cars standing on the tracks. The employes of the Omaha Company were aware of this. Although the rules of the Omaha Company required the engine bell to be rung while switching, it was not done at the time of this accident. The engine and freight train were backed with unusual force against the cars on this middle track, in violation of the Omaha Company's rules. The engine at the time was not in charge of the engineer, but of a fireman. The trainmen of the Omaha Company were in a hurry, endeavoring to clear the main track. The object of backing the freight train onto the middle track was to not take any of the cars standing on that track therefrom. It was unnecessary for the freight train to be backed on the middle track, as it could have been pulled out on the main track beyond the engine house. No signal of any kind was

given before backing this freight train against the cars on the middle track.   Young Morgan had been trained and instructed to listen for signals before going under cars.   At the point he passed under the cars he could not see the engine backing up the middle track southwest of him because of the curve, the distance, and the cars on the track.   The first intimation he had that the cars on the middle track were to be moved was the noise of their bumping together while he was under them.   The freight engine and train struck the cars standing on the middle track with sufficient force to drive them back northeast half a car's length. The engineer and fireman of the Omaha Company, on the subject of a signal being given prior to the backing of the freight train against the cars on the side track, testified as follows:

The fireman :

Q. What was done about the ringing of the bell while that train was in motion and while that switching was going on?

A. Well, I always ring the bell and did that night.   I ring the bell whenever the cars are moving.

Q. How do you know?   Do you recollect doing that?

A. Because it is my business.

Q. That is what makes you so sure then?

A. Yes, sir.

The engineer :

Q. Do you know whether there was any signal by the ringing of the bell or the whistle while the train was in motion?

A. We always ring the bell.   We don't blow the whistle; it would scare teams.

Q. In a location like that you never use the whistle?

A. No, sir; only when there is something standing on the track.

Q. What did you say about the bell being rung?

A. It was rung going over the crossing.

Cross-examination:

Q. You don't remember that night in particular, only because it was the custom?

A. No, sir.

Q. You rang the bell when you went down there to make the coupling, and you rang the bell when you pulled out of the middle of the track?

A. Yes, sir.

Q. The only reason that you know that is because it is the custom?

A. Yes, sir.

Four contentions are relied on here for a reversal of this judgment.

1. That the verdict of the jury in finding the Omaha Company guilty of negligence is not supported by the evidence. The negligence charged to the Omaha Company was that while Morgan was in the act of passing under the cars on the middle track, the Omaha Company negligently backed with great and unnecessary force its freight engine and train against the cars standing on the middle track. It is not disputed by the Omaha Company that it pulled its freight train and engine off the main track and pushed it back against the cars standing on the middle track at the time that Morgan was passing under said cars on said middle track. The dispute relates chiefly to the force with which the freight train was driven back against the cars and as to whether any signal was given before such movement took place. We think the evidence sustains the findings of the jury that the freight train and engine were driven back against the cars standing on the middle track with great force and without any signal of any kind being given prior thereto. But it is said by counsel for the Omaha Company that "the accident occurred upon the private grounds of the company and upon the track where Morgan had no right except at least as a mere licensee." The undisputed evidence is that this station, and the yards and tracks,

were jointly owned or used by both the Omaha and St. Paul Companies and that young Morgan, at the time he was injured, and for some years prior thereto, was an employe of the St. Paul Company. Morgan then was neither a trespasser nor a licensee on these railroad grounds. He had the same rights there that the employes of the Omaha Company had, and this brings us to the consideration of another question. As an employe of the St. Paul Company, what duty did the Omaha Company and its employes owe to young Morgan?

In *Pennsylvania R. Co. v. Gallagher*, 15 Am. & Eng. R. Cases [O.], 341, one Gallagher was in the employ of the Baltimore & Ohio Railroad Company as a car inspector and repairer. The Pennsylvania Company's railroad track crossed the Baltimore & Ohio railroad track at Mansfield, Ohio, at which place there was a track called a transfer track. Gallagher was repairing a car belonging to the Baltimore & Ohio Railroad Company, standing on this transfer track. His minor son, eleven years of age, brought him his dinner, and Gallagher, while repairing the car, requested his boy to assist him, which the boy did, and while he was assisting him, and while both the father and son were under the car being repaired, the Pennsylvania Company, without signal of any kind, backed some cars with great force on this transfer track, striking the car under which Gallagher and his son were, and injuring the boy. He then, by his next friend, sued the Pennsylvania Company for damages, and one of the defenses was that the boy had no right upon the grounds. But the supreme court of Ohio overruled this defense, saying: "The father did not exceed his powers in calling upon his son for temporary assistance, and though a contingency might have been possible in which the Baltimore & Ohio Company might have raised a question as to the son's right to recover of it in an action for injuries received through his father's carelessness, such possible contingency would not excuse a

want of due care on the part of the Pennsylvania Company. Charles Gallagher was not a trespasser, nor wrongfully on the premises where he was injured, and we cannot reach the conclusion that he bore such a relation to the Baltimore & Ohio Railroad Company that while rendering needed assistance to that company, in compliance with the directions of its agent with such implied authority, he was placed beyond the pale of protection against the carelessness of the plaintiff in error."

In *Illinois Central R. Co. v. Frelka*, 110 Ill., 498, the facts were: The Illinois Central Railroad Company and the Michigan Central Railroad Company jointly occupied certain depot grounds on which each maintained its separate railroad tracks in the city of Chicago. Frelka was in the employ of the Michigan Central Railroad Company. His duties were to be performed at the stock yards. He was necessarily crossing the tracks of the Illinois Central Railroad Company for the purpose of boarding a caboose standing upon a track of the Michigan Central Railroad Company to take him to the stock yards, and while crossing the tracks, an engine of the Illinois Central Railroad Company running in the yard, without the ringing of a bell or the sounding of a whistle, struck him and he was injured, and for which he sued that company for damages. One argument of the counsel for the Illinois Central Railroad Company, as appears from the reported opinion, was that Frelka was not in the employ of the Illinois Central Railroad Company; that he was not intending to enter any caboose of that company; that the company held out no inducement for him to cross its tracks; that he was not upon their grounds upon any license, express or implied. The supreme court of Illinois answering this argument said: "When these two companies agreed * * * to a joint occupancy of the depot and depot grounds, and located their tracks as we now find them, they were bound to know their business could not be successfully carried on without

their respective servants, in the discharge of their duties, having to pass over each other's tracks, and hence it is but reasonable to conclude they impliedly consented this might be done, and the fact that this was done  *  *  *  without objection affords the strongest evidence this was the understanding of the parties.  *  *  *  Under the facts as the jury must have found, the appellant owed the same duty to the servants of the Michigan Central Railroad Company when crossing the former's tracks in the regular discharge of their duties that it did to its own servants when crossing the same tracks."

In *Watson v. Wabash, St. L. & P. R. Co.*, 19 Am. & Eng. R. Cases [Ia.], 114, Watson was in the employ of a lumber company and was sent with his wagon and team to haul lumber from a car standing on a side track of the railroad.    Watson was on the car loading lumber into his wagon backed up against the end of the car.    He was warned of the approach of an engine, and fearing for the safety of his horses attempted to step down from the car, using the coupling link to rest his foot upon.    While in that position another car was kicked and thrown violently against the car he was unloading, by which he was injured. No warning was given Watson that cars were being switched or thrown onto this track.    The defense of the railroad company was that the evidence failed to show any negligence on its part.    The supreme court of Iowa overruled this objection, deciding that "a railroad company that allows cars, without warning, to be thrown violently back against other detached cars that are being unloaded, whereby a teamster engaged in unloading the cars is injured, is guilty of negligence, and, in the absence of contributory negligence on the part of the party injured, is liable therefor."    The court said: "If the plaintiff was rightfully there, the company owed him the duty of such care as is necessary for the safety of all persons engaged as he was; and it is not for the company's employes to close

their eyes and excuse themselves by saying that they did not know that any one was being imperiled. That the plaintiff was in fact rightfully there appears to us to be clear. The car had been placed where it was for the purpose of being unloaded by the owner of the lumber, and the owner of the lumber had sent the plaintiff to unload it."

These authorities establish the rule that where two railroad companies occupy the same property jointly, such as depot grounds, switch yards, and tracks, each company must exercise ordinary care to prevent injuring the employes of the other, and that if an employe of one company while on such grounds in the discharge of his duty, without negligence on his part, is injured by the negligence of the employes of the other company, such company will be liable therefor.

2. It is next urged that young Morgan was guilty of such contributory negligence as precludes his recovery. In *American Water-Works Co. v. Dougherty*, 37 Neb., 373, the doctrine of this court on the subject of contributory negligence is thus stated: "Issues as to the existence of negligence and contributory negligence and as to the proximate cause of an injury are for the jury to determine when the evidence as to the facts is conflicting, and where different minds might reasonably draw different inferences as to these questions from the facts established." The same rule is also laid down in *Chicago, B. & Q. R. Co. v. Landauer*, 36 Neb., 642; *Omaha Street R. Co. v. Craig*, 39 Neb., 601, and cases there cited.

The evidence in the case at bar shows that young Morgan was, at the time he was injured, in the discharge of his duty as an employe of the St. Paul Company; that it was necessary for him to cross the middle track in the performance of the duties about which he was engaged; that this track was filled with cars; that these cars formed at the time he was injured no part of any train. No cars

were being taken from this track for the purpose of making up a train, and no cars were being switched for the purpose of storing them onto this track.    He had been in the employ of the St. Paul Company in and about these yards for some three years.    He had been trained and cautioned to listen for signals, and not to pass under or between cars when in motion or when he might apprehend danger.    The fact that he crawled under the cars was evidence of negligence on his part, but we cannot say that by so doing he was guilty of such negligence as precludes his right to recover.    That was a question properly submitted to the jury, and we cannot say that their conclusion is unsupported by the evidence.    Had the cars under which young Morgan crawled been a part of a train standing upon a track, or had the cars been in motion, or had he gone under the cars after the ringing of a bell or the sounding of a whistle, it might be different.    Whether he was guilty of negligence in crawling under these cars at the time and place and under the circumstances that he did, and while engaged in performing the duties of his employment, is a question about which reasonable men might honestly differ.

In *Goodfellow v. Boston, H. & E. R. Co.*, 106 Mass., 461, Goodfellow was in the employ of a contractor who was building a supporting wall for the railroad company. While engaged in this work Goodfellow stood on a sidetrack of the railroad holding a guy rope, and while thus engaged an engine of the railroad company, without giving any signal of its approach, backed down on the side track and injured Goodfellow, who sued the company for damages.    The *nisi prius* court directed a verdict for the railroad company on the ground that the evidence showed that Goodfellow was injured through his own negligence by standing upon the side track of the railroad.    The supreme court of Massachusetts reversed this ruling, holding that on the evidence a jury would be warranted in finding that

Goodfellow at the time he was injured was in the exercise of due care.

In *Christman v. Philadelphia & R. R. Co.*, 21 Atl. Rep. [Pa.], 738, Christman was in the employ of a rolling mill on whose grounds were some tracks of the railroad company. The company had unloaded a car of iron on the grounds and Christman was engaged in carrying this iron into the mill. In doing this he had to cross a track of the railroad company's between the pile of iron and the mill. On this track were standing some freight cars. To faciliate his work he uncoupled two of these cars and passed between them in going to and fro between the iron pile and the mill. While engaged in his work he saw a switch engine pass up the track, and surmising that the cars which he had uncoupled might be moved he replaced the coupling and started back after another piece of iron. Just at that moment the cars were jammed together and he was injured. The defense was that he was guilty of contributory negligence, but the supreme court of Pennsylvania overruled the defense and said: " Was the plaintiff so clearly guilty of contributory negligence that the court was bound to say so as a matter of law? Plaintiff was there in the prosecution of his work. The iron was between the tracks and he necessarily had to cross one of them to go to the mill. * * * To faciliate his work he widened the passage between the cars by taking out the coupling. * * * Much stress is laid by appellant on the fact that plaintiff had been employed on or about the switch for several months and had knowledge of the danger during the operation of shifting. * * * It was * * * relevant, as showing knowledge which bore upon the question of negligence; but this knowledge had a double edge. While conveying notice of danger, it also conveyed notice of the time likely to elapse and the warning customarily given before the danger became imminent. It was in evidence that, after the plaintiff saw the engine go up, fifteen or

twenty minutes were occupied in coupling the cars to be taken out and getting the train together. It is also in evidence that the two cars between which the injury occurred were not defendant's cars and not to be taken out. Under these circumstances it certainly was not plaintiff's duty immediately on seeing the engine go up to cease work and stand idle for the fifteen or twenty minutes required in the operation of shifting. How long he might prudently continue work, and what amount of observation he was bound to give to the progress of coupling the cars and approaching his locality, depended upon too many elements to enable the court to say there was any fixed standard of prudent conduct to which he was bound to conform. That, under the circumstances in evidence, was a question for the jury."

3. That the court erred in instructing the jury on its own motion. One instruction objected to is as follows: "And if you believe from the evidence in this case that the defendant, by its agents, servants, or employes in charge of its engine and cars, or on or about the 20th of June, 1890, at its yards in Norfolk, unnecessarily, negligently, and carelessly backed said engine and cars upon one of the switches in said yards, and at a time when the plaintiff was crossing the said switch, and in consequence of which the plaintiff was run over by the cars then standing on said switch, and injured, as alleged, you should then determine from all the evidence the place where said accident occurred, the nature and character of the work the defendant was engaged in at the time, the character and condition of the yards at the time, and from these, and all the other facts, circumstances, and evidence before you, say whether the said acts of the defendant were necessary in the operation of said railway, or whether they were unnecessarily, carelessly, and negligently done; and if you believe from the evidence before you that the said acts of defendant were unnecessary and negligent, then you should inquire whether, from the evidence, the plaintiff, at the

time of the said injury complained of, in view of the work he was engaged in and the manner of performing it, the place where the injury occurred, his knowledge of the condition of the yards at the time, the plaintiff's position at the time the accident occurred, and from these, and all the other facts and circumstances in evidence in the case, say whether plaintiff was guilty of negligence that contributed to the injury complained of; and if you find the plaintiff was guilty of no negligence, nor of any act that contributed to the injuries, then the plaintiff is entitled to recover; but if you find from the evidence that the plaintiff was guilty of any negligent act or omission on his part that contributed to the injury complained of, then he cannot recover, and you should find for the defendant." The criticism on this instruction is that it directed the jury to consider as an element of the railroad company's liability whether the backing of the freight train and engine against the cars on the middle track was a necessary act. We think that the evidence is sufficient to sustain the finding that this act of the company was wholly unnecessary; but the criticism on the instruction is not a fair one, as the instruction tells the jury that the backing of the freight train on the middle track must not only have been unnecessarily done, but must have been negligently and carelessly done as well. We do not think that the plaintiff in error was prejudiced by this instruction.

Another instruction complained of by the plaintiff in error is as follows: " The defendant alleges that plaintiff's injuries were the result of his own negligence, and not the negligence of the defendant. In determining whether or not the plaintiff's injuries were caused by his own negligence you are instructed that the same degree of care is not required of a child of tender years and limited experience that is required of an ordinary grown person. Unless you find from the evidence that the plaintiff, at the time he was injured, failed to exercise that degree of care for

his own safety which a person of his age, development, and experience would naturally and ordinarily use in the same situation and under the same circumstances, then you will find that the plaintiff has not been guilty of any such negligence as will defeat his recovery on that ground." This instruction stated the law correctly. In *Chicago, B. & Q. R. Co. v. Grablin*, 38 Neb., 90, the company was sued for the killing of a child asleep on its track. The district court instructed the jury that if they believed from the evidence that Samuel Grablin, by reason of his being so young, was incapable of exercising any more care or discretion than he did exercise at the time of the accident, then contributory negligence was not imputable to him. Grablin was, at the time he was killed, a child about eight years of age. This court approved of that instruction. In *Rauch v. Lloyd*, 31 Pa. St., 358, the supreme court of Pennsylvania, in discussing the question of charging a child with negligence, said: "He acted like a child, and he is not to be judged as a man."

Complaint is also made because of the refusal of the trial court to instruct the jury as follows:

"The court instructs the jury that if a person attempts to pass under cars standing upon a crowded side track at the station, and using the roads and tracks for railroad purposes, and in and about the making up of trains, such conduct is negligence; and that if you shall find from the evidence there had been a custom on plaintiff's part grown up by plaintiff's practice to pass under the cars at such times, such custom will not relieve him of the consequence of such negligence, and if you believe from the evidence that under such circumstances the plaintiff was injured, he cannot recover, even if you shall further find from the evidence that the cars were suddenly started up or moved without giving the usual signal therefor. Under such circumstances you should find for the defendant.

"The jury is instructed that if they believe from the evidence that the plaintiff attempted to crawl under the bumpers of the freight cars at the time of the accident, he did not exercise ordinary care and caution, and his failure to exercise such care and caution, and voluntarily putting himself in a known dangerous position, is not excused by proof that plaintiff or other persons had been in the habit of going under cars in the same manner, and the jury is further instructed that no question of expediency or convenience warranted the plaintiff in incurring such known danger.

"The testimony being uncontradicted that the plaintiff attempted to crawl under the freight cars standing on the track in the yard of the defendant without taking the precaution to ascertain with reasonable certainty that there was no probable or impending danger in so doing, such action on the part of the plaintiff was negligent and contributed directly to the accident, and therefore the jury must so find."

Neither of these instructions should have been given. In *Missouri P. R. Co. v. Baier*, 37 Neb., 235, it was held: "The existence of negligence should be proved and passed upon by the jury as any other fact. It is improper to state to the jury a circumstance or group of circumstances as to which there has been evidence on the trial, and instruct that such fact or group of facts amounts to negligence *per se*. At most, the jury should duly be instructed that such circumstances, if established by a preponderance of the evidence, are properly to be considered in determining the existence of negligence." (*Omaha Street R. Co. v. Craig*, 39 Neb., 601, and cases there cited.) By these instructions, and each of them, the court was requested to charge the jury, in effect, that young Morgan, in crawling under the cars at the time and place that he did, was guilty of negligence. A trial court may instruct a jury that a certain act or omission is evidence of negligence, but it is for the jury to

find the conclusion.   There was no error in refusing to give
these instructions.   The judgment of the district court is

AFFIRMED.