## THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY v. PHILIP PAYNE.

STEAM WHISTLE, *Not Sounded; Statute not Violated.* Plaintiff drove his team of horses to a mill outside of a city or village, on a public highway, about one hundred yards from the railroad crossing. It was a cold, stormy day, and he was cold; he fastened the team to the usual hitching post at the mill, in plain view of the railroad; also fastened the lines, locked the wagon, and went into the mill. The team was tied about ten feet from the door of the mill, so that plaintiff could see it from the window on the east side of the mill; and he could have seen the train eighty to one hundred and fifty yards before it approached the crossing. He sat down by the window to watch; the miller told him it would soon be train-time; he sat there awhile and listened, then went to the door and listened for the train, went back, and sat down by the stove near the window. The first thing he knew, the team was frightened at the approaching freight train, broke loose, and started in the direction of his home, across the railroad track. The train and team met at the crossing, the team turned west up the track toward the cattle-guard; the train caught it, killed one of the team, crippled one badly, broke the wagon, and tore up the harness. *Held,* As plaintiff was not traveling on the highway, at or near the railroad crossing, and as his team was not at large or traveling at or near the crossing, the company owed him no duty, under the statute, to sound the whistle for the purpose of giving him notice, so that he might leave the mill and hold or look after his team to keep it from breaking loose and running away. ( Comp. Laws 1879, ch. 23, §60.)

### *Error from Wilson District Court.*

ACTION brought by *Payne* against the *Railway Company,* to recover certain damages to his team, wagon, and harness. Trial at the May Term, 1881, of the district court, and judgment for the plaintiff for $200 and costs. The defendant brings the case here. The opinion states the facts.

*John O'Day,* for plaintiff in error.

*T. J. Hudson,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: On or about the 20th day of February, 1880, Philip Payne drove his team of horses in the afternoon to McGahey's mill, situated outside of a city or village, on

Fall river, in Wilson county, on a public highway which crossed the St. Louis & San Francisco railroad at the distance of one hundred to one hundred and twenty yards north of the mill. He fastened the team to the usual hitching-post at the mill, which was in plain view of the railroad; also fastened the lines and locked the wagon, and then went into the mill. It was a cold, stormy day, and he was cold; the team was tied about ten feet from the door of the mill, so that Payne could see it from the window on the east side of the mill, and he could have seen the train eighty to one hundred and fifty yards before it approached the crossing. He sat down by the window to watch; the miller told him it would soon be train-time; he sat there awhile and listened; then he went to the door and listened for the train, went back, and sat down by the stove near the window. The first thing he knew, the team got frightened at the approaching freight train, broke loose, and started in the direction of his home, across the railroad track. The train and team met at the crossing; the team turned west up the track toward the cattle-guard; the train caught it, killed one of the team, crippled one badly, broke up the wagon, and tore up the harness. Several witnesses testified that the steam whistle attached to the locomotive was not sounded eighty rods from the place where the railroad crossed the highway, and one witness testified that the whistle did not sound until within sixty yards of the crossing. Payne, among other things, testified that he was in the mill at the time the team started; that the whistle was sounded some sixty or seventy yards from the crossing, but he did not hear the whistle eighty rods before the train reached the crossing, and he thought the whistle did not sound except when the employés saw the team running; that the engineer whistled down brakes, and they were put on, and the employés of the railway company attempted to stop the team.

In the action brought to recover damages for the injuries mentioned, upon the trial the jury found specially that the railway company neglected to sound the whistle at the distance

of eighty rods from the crossing of the highway where the team was injured, and the team, wagon and harness were injured by reason of such neglect. The material question therefore in this case is, whether Payne is entitled to recover on account of the omission of the railway company to sound the whistle on its engine eighty rods from the place where its road crossed the highway. We are cited to § 60, ch. 23, Comp. Laws 1879, p. 226, which reads:

"A steam whistle shall be attached to each locomotive engine, and be sounded three times at least eighty rods from the place where the railroad shall cross any public road or street, except in cities and villages, under a penalty of not more than twenty dollars for every neglect of the provisions of this section, to be paid by the corporation owning the railway, on the suit of the county attorney, one half thereof to go to the informer, and the other half to the county for the support of common schools; and the corporation shall also be liable for all damages which shall be sustained by any person by reason of such neglect: *Provided, however,* That such penalty shall be sued for within one month from the time the cause of action accrues, and not thereafter: *And provided further,* That but one penalty shall be recovered in any one action."

Payne was in the mill and his team was hitched when the whistle ought in the first instance to have been sounded; he was not then traveling on the highway at or near the crossing, nor was his team at large near the crossing. His only purpose in wanting the whistle sounded was to give him notice of the approaching train so that he might leave the mill and hold or look after his team. As thus situated, the railroad company owed him no duty under the statute to sound the whistle. (1 Thompson on Neg., p. 452; *Harty v. Rld. Co.,* 42 N. Y. 468; *Elwood v. Rld. Co.,* 4 Hun, 808; *Rld. Co. v. Spearen,* 43 Pa. St. 300; *O'Donnell v. Rld. Co.,* 6 R. I. 211; *Holmes v. Rld. Co.,* 37 Ga. 593; *Rld. Co. v. Houston,* 95 U. S. 697.)

Of course it cannot be contended that the omission of the railway company to sound the whistle eighty rods from the crossing frightened or caused the team to run away. As the

facts in this case are undisputed, the effect of them is for the judgment of the court; and notwithstanding the findings of the jury and the verdict returned, it becomes our duty as a matter of law to say that there was no evidence submitted sufficient to make out a *prima facie* case, and Payne was not entitled to recover. We have not thought it necessary to refer to the evidence or findings concerning the crossing at the railroad, because it is apparent that unless Payne was within the protection of the statute quoted, he is not entitled to recover. As the statute is not applicable to Payne under the circumstances, proof of omission of the railway company to give the signal required by law, does not make it liable for the damages sustained by him.

The judgment of the district court must be reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

VALENTINE, J., concurring.

BREWER, J.: I concur in the judgment of reversal, but do so on the ground that it does not appear that Payne's team was on the highway, at the time the train approached. For all the record shows, it may have been hitched to a post on private grounds, and I do not think the statute applies in any such case.