CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY v. HORACE C. METCALF.

FILED APRIL 16, 1895.    No. 5803.

1. **Railroad Companies:** PUBLIC CROSSINGS: SIGNALS. Section 104, chapter 16, Compiled Statutes, requiring that a bell shall be rung or a steam whistle sounded by a locomotive at a distance of at least eighty rods from the place where a railroad shall cross any other road or street, etc., applies as well to roads in fact used by the public though not dedicated as public highways as to those so dedicated.

2. ——: ——: ——: CONSTRUCTION OF STATUTE. The object of that statute is not merely to protect persons intending to cross the track from collisions, but also to protect all persons lawfully at or near the crossing from any danger naturally to be apprehended from the sudden approach without warning of a train at such a place.

3. ——: ——: ——: DAMAGES. Therefore, where a crossing had been provided at a railway station to afford access to the depot, one whose team had been driven to a car upon a side track near the depot for the purpose of unloading the car was within the protection of the statute.

4. ——: ——: ——: ——. In such a case it was erroneous to instruct the jury that the railroad company was liable if it failed to give the signal required by statute, provided the injury was caused in consequence of such omission. *Union P. R. Co. v. Rassmussen*, 25 Neb., 810, in so far as it states a contrary doctrine, overruled.

5. **Damages:** NEGLIGENCE: INJURY TO CHATTELS. Where chattels are injured by the negligence of another, but not wholly de-

Chicago, B. & Q. R. Co. v. Metcalf.

stroyed, the measure of damages is the difference between the value of the chattels immediately before the injury and immediately thereafter.

6. ——: ——: ——. One whose chattels are injured by the negligence of another cannot, by voluntarily abandoning what remains, charge that other with the total value of the chattels; and where there was evidence tending to show that the destruction was not total and that the plaintiff had so voluntarily abandoned what remained, it was error to instruct the jury that the measure of damages was the market value of the chattels before the injury.

ERROR from the district court of Hamilton county. Tried below before WHEELER, J.

The facts are stated by the commissioner.

*A. W. Agee*, for plaintiff in error:

The signals required by statute to be given when a train is approaching a public street or highway is exclusively for the benefit of persons traveling along such street or highway, and about to cross the railroad at the highway crossing. (*Clark v. Missouri P. R. Co.*, 11 Pac. Rep. [Kan.], 134; *Illinois C. R. Co. v. Phelps*, 29 Ill., 447; *Bell v. Hannibal & St. J. R. Co.*, 72 Mo., 50; *Hodges v. St. Louis, K. C. & N. R. Co.*, 71 Mo., 50; *Holmes v. Central Railroad & Banking Co.*, 37 Ga., 593; *Randall v. Baltimore & O. R. Co.*, 109 U. S., 478; *Rosenberger v. Grand Trunk R. Co.*, 8 Ont. App., 482; *East Tennessee, V. & G. R. Co. v. Feathers*, 10 Lea [Tenn.], 103; *St. Louis & S. F. R. Co. v. Payne*, 29 Kan., 166; *Cordell v. New York C. & H. R. R. Co.*, 64 N. Y., 535; *Byrne v. New York C. & H. R. R. Co.*, 94 N. Y., 12; *Alabama G. S. R. Co. v. Hawk*, 72 Ala., 112; *Harty v. Central Railroad Company of New Jersey*, 42 N. Y., 471; *People v. New York C. R. Co.*, 25 Barb. [N. Y.], 199; *Elwood v. New York C. & H. R. R. Co.*, 4 Hun [N. Y.], 808; *Philadelphia & R. R. Co. v. Spearen*, 47 Pa. St., 300; *O'Donnell v. Providence & W. R. Co.*, 6

58

R. I., 211; *Chicago, R. I. & P. R. Co. v. Houston*, 95 U. S., 697.)

The seventh and eighth instructions are erroneous. (*St. Louis & S. F. R. Co. v. Payne*, 29 Kan., 166; *Byrne v. New York C. R. Co.*, 104 N. Y., 362; *Harrison v. North Eastern R. Co.*, 29 L. T., n. s. [Eng.], 844; *Sutton v. New York C. & H. R. R. Co.*, 66 N. Y., 243; *Nicholson v. Erie R. Co.*, 41 N. Y., 526; *Hodges v. St. Louis, K. C. & N. R. Co.*, 71 Mo., 50; *Bauer v. Kansas P. R. Co.*, 69 Mo., 219; *Wabash, St. L. & P. R. Co. v. Neikirk*, 15 Brad. [Ill.], 172; *Bennett v. Grand Trunk R. Co.*, 13 Am. & Eng. R. Cas. [Can.], 627; *Thomas v. Delaware, L. & W. R. Co.*, 8 Fed. Rep., 728; *Hill v. Portland & R. R. Co.*, 55 Me., 438; *Johnson's Administrator v. Louisville & N. R. Co.*, 13 Am. & Eng. R. Cas. [Ky.], 623; *Cordell v. New York C. & H. R. R. Co.*, 6 Hun [N. Y.], 461; *Paducah & M. R. Co. v. Hoehl*, 12 Bush [Ky.], 41; *Bauer v. Kansas P. R. Co.*, 69 Mo., 219; *Hickey v. Boston & L. R. Co.*, 14 Allen [Mass.], 432; *Smith v. Savannah & F. W. R. Co.*, 11 S. E. Rep. [Ga.], 455; *Ely v. City of Des Moines*, 52 N. W. Rep. [Ia.], 475; *Pittsburg S. R. Co. v. Taylor*, 104 Pa. St., 306; *City of Erie v. Magill*, 101 Pa. St., 623; *Fleming v. City of Lock Haven*, 15 W. N. C. [Pa.], 216; *Carey v. Chicago, M. & St. P. R. Co.*, 61 Wis., 71; *Courson v. Milwaukee & St. P. R. Co.*, 32 N. W. Rep. [Ia.], 8; *Chicago, R. I. & P. R. Co. v. Houston*, 95 U. S., 697; *Miner v. Connecticut River R. Co.*, 26 N. E. Rep. [Mass.], 994; *Gonzales v. New York & H. R. Co.*, 38 N. Y., 440.)

The evidence does not support the verdict, because the only allegation of negligence which it is claimed contributed to the injury is that the signals required by statute to be given at public crossings were not given, and this allegation is not supported by the evidence. (*Fleming v. City of Lock Haven*, 15 W. N. C. [Pa.], 216; *Chicago & A. R. Co. v. Gretzner*, 46 Ill., 74; *Chicago, B. & Q. R. Co. v. Dickson*, 88 Ill., 431; *Chicago, B. & Q. R. Co. v. Stumps*,

55 Ill., 367; *Frizell v. Cole*, 42 Ill., 362; *Wabash, St. L. & P. R. Co. v. Hicks*, 13 Brad. [Ill.], 407; *Chicago & A. R. Co. v. Robinson*, 106 Ill., 142; *Seibert v. Erie R. Co.*, 49 Barb. [N. Y.], 583; *Chicago & R. I. R. Co. v. Still*, 19 Ill., 500; *Cleveland v. Chicago & N. W. R. Co.*, 35 Ia., 220; *Merz v. Missouri P. R. Co.*, 14 Mo. App., 459; *Evans v. St. Louis & S. F. R. Co.*, 17 Mo. App., 624; *Hanlon v. South Boston H. R. Co.*, 129 Mass., 310; *St. Louis & S. F. R. Co. v. Payne*, 29 Kan., 166; *Chicago & N. W. R. Co. v. Clark*, 2 Brad. [Ill.], 116; *Goldstein v. Chicago, M. & St. P. R. Co.*, 1 N. W. Rep. [Wis.], 37; *Whitney v. Maine C. R. Co.*, 69 Me., 208; *Deville v. Southern P. R. Co.*, 50 Cal., 383; *Baltimore & O. R. Co. v. Whitacre*, 35 O. St., 627; *Carroll v. Minnesota Valley R. Co.*, 13 Minn., 30; Shearman & Redfield, Negligence, 281, and note 1; *Rothe v. Milwaukee & St. P. R. Co.*, 21 Wis., 256; *Lake Shore & M. S. R. Co. v. Miller*, 25 Mich., 274; *Hickey v. Boston & L. R. Co.*, 14 Allen [Mass.], 429.)

*Marquett & Deweese*, also for plaintiff in error.

*Whitmore & Carr, contra*, in their argument upon the legal duty or obligation of the company to the defendant in error, cited the following cases: *Sweeney v. Old Colony & N. R. Co.*, 10 Allen [Mass.], 368; *Chicago & N. W. R. Co. v. Dunleavy*, 129 Ill., 132; *Texas & P. R. Co. v. Best*, 66 Tex., 116; *McKone v. Michigan C. R. Co.*, 51 Mich., 601; *Davis v. Chicago & N. W. R. Co.*, 58 Wis., 646; *Virginia M. R. Co. v. White*, 84 Va., 498; *Barry v. New York C. & H. R. R. Co.*, 92 N. Y., 289; *Erickson v. St. Paul & D. R. Co.*, 43 N. W. Rep. [Minn.], 332; *Lonergren v. Illinois C. R. Co.*, 49 N. W. Rep. [Ia.], 852; *New York, L. E. & W. R. Co. v. Leamon*, 15 L. R. A. [N. J.], 426; *Chicago, B. & Q. R. Co. v. Daugherty*, 110 Ill., 521; *Grippen v. New York C. R. Co.*, 40 N. Y., 34; *South & North Alabama R. Co. v. Thompson*, 62 Ala.,

499; *Finklestein v. New York C. & H. R. R. Co.*, 41 Hun [N. Y.], 34; *Shaber v. St. Paul, M. & M. R. Co.*, 28 Minn., 107; *Macon & W. R. Co. v. Davis,* 18 Ga., 686; *Norton v. Eastern R. Co.*, 113 Mass., 366; *Dyson v. New York & N. E. R. Co.*, 57 Conn., 23; *Union P. R. Co. v. Rassmussen,* 25 Neb., 810; *Omaha, N. & B. H. R. Co. v. O'Donnell,* 22 Neb., 475.

As to the rate of speed of the train and the failure to ring the bell the following authorities were cited: *Rockford, R. I. & St. L. R. Co. v. Hillmer*, 72 Ill., 935; *Chicago, B. & Q. R. Co. v. Cauffman*, 38 Ill., 425; *City of Plattsmouth v. Mitchell,* 20 Neb., 228; *Stevens v. Howe,* 28 Neb., 547; *American Water-Works Co. v. Dougherty,* 37 Neb., 373; *McKean v. Burlington, C. R. & N. R. Co.*, 55 Ia., 194; *Knowles v. Mulder,* 74 Mich., 202.

*E. J. Hainer,* also for defendant in error:

To persons who are lawfully upon the grounds of the company engaged in necessary business the company owes a duty of active vigilance. (*Haley v. New York C. & H. R. R. Co.*, 7 Hun [N. Y.], 84; *Barton v. New York C. & H. R. R. Co.*, 56 N. Y., 660; *Goodfellow v. Boston, H. & E. R. Co.*, 106 Mass., 461; *Schultz v. Chicago & N. W. R. Co.*, 44 Wis., 638; *Newson v. New York C. & H. R. R. Co.*, 29 N. Y., 383; *Emery v. Minneapolis Industrial Exposition,* 57 N. W. Rep. [Minn.], 1132; *Union P. R. Co. v. Sue,* 25 Neb., 772; *Cassida v. Oregon R. & N. Co.*, 14 Ore., 551; *McKimble v. Boston & M. R. Co.*, 139 Mass., 542; *Texas P. R. Co. v. Brown,* 78 Tex., 397; *Collins v. Toledo, A. A. & N. M. R. Co.*, 80 Mich., 390.)

The statutory requirement for signals at the crossings applies to persons whose property is lawfully on the highways or grounds of the company. (*Cosgrove v. New York C. & H. R. R. Co.*, 87 N. Y., 88; *Rosenberger v. Grand Trunk R. Co.*, 8 Ont. App. [Can.], 482; *Ransom v. Chicago, St. P., M. & O. R. Co.*, 62 Wis., 178.)

The omission to give the signals at crossing was negligence. (*Wakefield v. Connecticut & P. R. R. Co.*, 37 Vt., 330; *Hart v. Chicago, R. I. & P. R. Co.*, 56 Ia., 166; *Western & A. R. Co. v. Jones*, 65 Ga., 631; *Lonergren v. Illinios C. R. Co.*, 49 N. W. Rep. [Ia.], 852.)

IRVINE, C.

Metcalf sued the railroad company to recover damages for injuries done to a team of mules, a wagon, and set of harness which had been struck by a train of the company near the station at Hampton. There was a verdict and judgment for the plaintiff for $365.42, to reverse which the railroad company prosecutes error.

The evidence upon which the verdict is evidently based tends to show that at Hampton the plaintiff in error's railroad passes through the village in an easterly and westerly course, nearly all of the inhabited portion of the village lying north of the tracks. There is a side track, with switches at either end, lying north of the main line. The station is situated between the main line and the side track at a point not far from the west switch. Two highways cross the tracks, one being Third street, or, as the witnesses designate it, Main street, about 275 feet east of the depot. The other, a section line road at the east boundary line of the village, about 1,000 feet from the depot. In addition to these crossings there are two others, one immediately east and one immediately west of the depot platforms. These crossings are not on public highways, but were placed by or at least with the consent of the railroad company for the purpose of affording access to its depot and platforms. The main line, the side track, and the depot platform outline a triangle west of the depot, and one of the crossings referred to affords an entrance to the space thus inclosed. The primary object of this crossing was to afford access for teams to the west platform. In unloading and loading cars standing on the side track to the west of the depot it

is practicable either to drive a wagon north of the side track close to the cars or south of the side track by means of this crossing into the triangular space referred to. Metcalf owned a mill situated some distance south of the tracks. His manager had been notified that a car load of coal consigned to him had arrived, and a servant named Dixon was instructed to take the mules and wagon and unload this coal. The car stood upon the siding a short distance west of the depot. Dixon drove over the Main street crossing to the north side of the car and from that side took one wagon load of coal. Returning for the second load he testifies that he found the Main street crossing blocked by cars and therefore drove by the depot, and over what we have called the west crossing, into the triangular space, and approached the car from the south side. He applied the brake to the wagon, wrapped the lines around the brake handle, and, mounting the car, was engaged in shoveling coal into the wagon when a freight train approached from the east frightening the mules, which ran towards the crossing and were there struck by the train. One mule was killed, the other severely injured, and the harness and wagon were torn to pieces. The negligence alleged is that the train was behind its schedule time, that it was running at a dangerous rate of speed, and that no signals were given by bell or whistle of the approach of the train.

Of the errors assigned it will be necessary to consider only those relating to the instructions. Complaint is made of the refusal of each of the instructions numbered 4, 5, 6, 7, 10, and 11 asked by the defendant. Of these the refusal of the tenth is the only assignment noticed in the briefs, and the others must, therefore, be deemed waived. The record does not contain any instruction numbered 10, so that we are unable to consider whether or not its refusal was erroneous. The seventh instruction given by the court is as follows:

" No. 7. The jury are instructed that if the evidence

shows that the crossings immediately east and west of the depot at Hampton, were placed there by the railroad company for the use of persons having business at or about the depot in either loading or unloading cars, and such crossings were in fact so used generally, then it was the duty of the person in charge of the engine in question to sound the signal provided by law, precisely the same as for any other crossings, and as elsewhere explained in these instructions."

Section 104, chapter 16, Compiled Statutes, is as follows: "Sec. 104. A bell of at least thirty pounds weight, or a steam whistle, shall be placed on each locomotive engine, and shall be rung or whistled at the distance of at least eighty rods from the place where the said railroad shall cross any other road or street, and be kept ringing or whistling until it shall have crossed said road or street, under penalty of fifty dollars for every neglect, to be paid by the corporation owning the railroad, one-half thereof to go to the informer and the other half to this state, and also be liable for all damages which shall be sustained by any person by reason of such neglect." It is argued that a proper construction of this section limits its application to public highways, and that the crossing where the accident occurred is not within the purview of the law, and that the instruction was, therefore, erroneous. We do not think the statute should be given so narrow an application. Some courts have held that such a statute is in derogation of the common law, and, therefore, the subject of strict construction, but we think in most of the cases where such statutes have been confined in their application to public highways, the language of the statute was such as to evidently call for such restriction. The object of the law was plainly to afford ample warning to persons near the railroad at points where they might lawfully cross, and where they were probably about to cross as trains approached. These crossings were expressly designed to afford access

to the depot of the railroad company, and the exigency for warnings was probably as great there as at highway crossings on the prairie. Therefore, we think that when the court instructed the jury that the duty to sound signals applied to this crossing, provided the jury should find that the crossings were placed there by the railroad company for the use of persons having business about the depot; and that such crossings were in fact so used generally, the law was stated as favorably to the railroad company as could be required. The language of the statute is, "where the said railroad shall cross any other road or street," and we hold that it applies as well to roads in fact used by the public, though not legally dedicated to public use, as to those so dedicated. The instruction was, therefore, correct.

The eighth instruction is as follows:

"No. 8. The court instructs the jury that by the laws of this state, every railroad company is required to have a bell of at least thirty pounds weight, and a steam whistle, placed and kept on each locomotive engine, which shall be rung or whistled at the distance of at least eighty rods from the place where the said railroad shall cross any other road or street, and be kept ringing or whistling until it shall have passed said road or street, and that the company shall be liable for all damages resulting by reason of a neglect to comply with such law. Now if the jury believe from the evidence that the persons in charge of the engine in question omitted to sound a whistle or ring a bell continuously for the distance ef eighty rods before reaching the crossing at which the team in question was struck, and you further believe from the evidence that the team was struck as charged in the petition in consequence of the omission to ring the bell or sound the whistle while the person in charge of the team was in the exercise of all reasonable care and caution in the matter, then the defendant railroad company is liable to the plaintiff for the loss and damage sustained by him, by reason of such injury, if any such has been proven."

It will be observed that this instruction charges the railroad company with the same duty toward the plaintiff as if the plaintiff's team, as the train approached, had been approaching the crossing with the intention of using the same, and the criticisms made upon the instruction raise the following questions: First—Does the statute impose any duty upon the railroad company except in favor of those on the road and about to cross the tracks? Second— If any duty is imposed in favor of others, does a violation of the statute as to such persons merely afford evidence of negligence, or does it constitute negligence as a matter of law, provided the injury be the proximate result of the violation of the statute?

On the first question suggested the authorities may be grouped in three classes. It has been sometimes held that the object of such a statute is solely to warn persons on a highway approaching and about to cross the tracks, and that, therefore, where the injury was sustained by any other person the failure to obey the statute was no evidence of negligence. Among the cases so holding are: *St. Louis & S. F. R. Co. v. Payne*, 29 Kan., 166; *Missouri P. R. Co. v. Pierce*, 33 Kan., 61; *Neeley v. Charlotte, C. & A. R. Co.*, 33 S. Car., 136; *O'Donnell v. Providence & W. R. Co.*, 6 R. I., 211. The case of *St. Louis & S. F. R. Co. v. Payne, supra*, was one very similar to this in its facts. It may here be observed that, in many cases where the rule has been stated in language similar to the above, the injury was suffered by someone on the tracks at a place other than a lawful crossing, and the language was not used to distinguish between persons about to cross and persons lawfully on the highway at or near the crossing, but not intending to cross. This distinction seems to have presented itself to Judge Brewer in *St. Louis & S. F. R. Co. v. Payne*, and he says that he concurred solely upon the ground that the plaintiff was not upon the highway. In another class of cases it is said that where the injury was

suffered by someone crossing or attempting to cross on the highway, the violation of the statute is negligence in law, but where the injury is to another person claiming to be so situated that he had a right to rely on the giving of the signals, the failure to give them is evidence of negligence, to be submitted to the jury with the other facts in the case. Among such cases are *Maney v. Chicago, B. & Q. R. Co.*, 49 Ill. App., 105; *Western & A. R. Co. v. Jones*, 65 Ga., 631. In the third class of cases it is held that the object of the statute is not solely to protect persons intending to cross the track from collisions, but that its object is to protect all persons lawfully at or near the crossing from any danger naturally to be apprehended from the sudden approach without warning of a train at such a place. *Harty v. Central Railroad, Co. of New Jersey*, 42 N. Y., 468, is a case usually cited in support of the rule announced in the first group of cases above cited; but an inspection of the case convinces us that the case really belongs in the last class. In that case the injury was sustained by a person walking upon the track at some distance from the crossing, and it was held that the statute did not protect such person; but the language of Allen, J., in *People v. New York C. R. Co.*, 25 Barb. [N. Y.], 199, was quoted with approval as follows: "The hazards to be provided against were twofold: (1) the danger of actual collision at the crossing; and (2) that of damage by the frightening of teams traveling upon the public highway near the crossing." In *Ransom v. Chicago, St. P., M. & O. R. Co.*, 62 Wis., 178, it was held that the statute was intended to guard against the danger of injury to teams traveling upon the highway near the crossing as well as the danger of actual collision at the crossing, and that a railroad company was, therefore, liable for injuries caused by a failure to obey the statute to persons traveling on a highway parallel with the railroad and not intending to cross the track. In *Lonergren v. Illinois C. R. Co.*, 49 N. W.

Rep. [Ia.], 852, the facts were similar to those in the case before us, and the court held that the plaintiff was within the protection of the statute. A rehearing was allowed and the first decision adhered to. (52 N. W. Rep., 236.) In the opinion on rehearing the court reviews the authorities at length, and to our mind conclusively demonstrates that the rule illustrated by the third class of cases is correct. The plaintiff was lawfully upon the company's land, having reached it by a means provided for the purpose. Whether or not he exercised due care in going where he did, in the care of his team and in watching for trains, was submitted to the jury and found in favor of the plaintiff. He claims that his driver had a right to rely on the giving of the statutory signals, and that had the company given them the driver would have been warned of the approach of the train in sufficient time to protect the mules from fright. Whether or not any signals were given is a question upon which the evidence was conflicting. We think that so far as the first question is concerned the instruction stated the law correctly and was applicable to the evidence.

The second question presented by the instruction under consideration is also one upon which courts in different states have reached different conclusions. In some states it is held that the violation of a statute or ordinance is negligence in law, while in others it is held that it is merely evidence of negligence. We think a consideration of the decisions of this court compels a solution of the question here without regard to authorities elsewhere. In the *City of Lincoln v. Gillilan,* 18 Neb., 114, it was held that even where the facts are undisputed, if upon such facts different minds may honestly draw different conclusions as to whether or not such facts establish negligence or the absence thereof, the question as to the conclusion to be arrived at is for the jury and not for the court. The rule there laid down, stated in those words, stated in equivalent language, or assumed without definite statement, has formed

the basis of all decisions in negligence cases, at least since
the decision cited. Among the more recent cases follow-
ing this rule may be cited: *Chicago, B. & Q. R. Co. v.
Laudauer*, 36 Neb., 642, 39 Neb., 803; *American Water-
Works Co. v. Dougherty*, 37 Neb., 373; *Missouri P. R. Co.
Baier*, 37 Neb., 235; *Omaha Street R. Co. v. Craig*, 39
Neb., 601; *Omaha & R. V. R. Co. v. Brady*, 39 Neb., 27;
*Omaha & R. V. R. Co. v. Morgan*, 40 Neb., 604; *Chicago,
B. & Q. R. Co. v. Wymore*, 40 Neb., 645; *Chicago, B. &
Q. R. Co. v. Wilgus*, 40 Neb., 660; *Chicago, B. & Q. R.
Co. v. Oleson*, 40 Neb., 889; *Union P. R. Co. v. Erickson*, 41
Neb., 1. In several cases it has been said that it was improper
to state to the jury a circumstance or group of facts and in-
struct that such facts or group of facts amounts to negligence
*per se.* (*Missouri P. R. Co. v. Baier, supra; Omaha & R. V.
R. Co. v. Morgan, supra.*) This rule, so well settled and so
generally adhered to, should not be departed from without
sound and conclusive reasons for the exception. It is
everywhere agreed that a jury may infer negligence from
the single fact of the violation of a statute, providing the
injury was the direct result of such violation; therefore,
where the violation of a statute is shown, and where from
that fact and from the other facts in evidence there can be
no ground for a reasonable difference of opinion as to the
negligence of the defendant, it might be proper to give
such an instruction as the one we are considering, but
we do not know that the obligation of a statute is any
greater than that of the unwritten law, and all negligence
must consist in the disregard of one or the other. We
cannot see that any distinction in kind arises between a
case where the defendant has violated a statutory obliga-
tion and one where he has violated the common law obli-
gation to conduct himself for the safety of others in such a
manner as one of ordinary prudence would conduct himself
under similar circumstances. We see no reason for carv-
ing out an exception to the general rule of negligence in

such a case as this, and the current of decisions of this court compels a result in accordance with that reached by adopting a general rule. In *Omaha, N. & B. H. R. Co. v. O'Donnell*, 22 Neb., 475, the negligence alleged was, as here, the failure to give the statutory signal for a crossing while running at a high rate of speed and behind schedule time. The rule was there stated in the syllabus to be that such facts were to be considered in deciding whether the company was guilty of negligence, and the opinion uses this language: "If it be true that the train was running at the rate of speed described by the witnesses through the village, and that no signal of any kind was given,— the train being one hour and a half later than its usual and regular time,—these facts would be proper to be considered by the jury in ascertaining whether the employes of plaintiff in error were negligent or not, the law requiring the signals to be given." This would seem to be a clear declaration that the violation of the ordinance, while sufficient evidence of negligence, is not conclusive and does not amount even to a presumption of law. An instruction to the same effect was quoted with approval in *Omaha Street R. Co. v. Loehneisen*, 40 Neb., 37. And in *Omaha Street R. Co. v. Duvall*, 40 Neb., 29, in discussing an ordinance limiting the speed of street cars, the court said: "If, therefore, the privilege granted is exercised in a manner forbidden by ordinances enacted for the safety of the general public and injuries result, these facts afford reasonable grounds for inferring negligence prejudicial to the rights of those in whose interests and for whose protection such municipal regulations were adopted. These principles were embodied in instruction No. 1, requested by plaintiff, and that instruction was, therefore, properly given." We are aware that in *Union P. R. Co. v. Rassmussen*, 25 Neb., 810, an instruction to the effect that where a railroad company runs its trains through a city at a greater rate of speed than the ordinance permits, negligence will

be presumed, was held correct; but in the opinion in that case it was said: "If the train was greatly exceeding the fixed rate, this was competent for the jury to consider as tending to prove negligence;" and in the syllabus the doctrine of the case was stated to be that the ordinance of the city limiting the speed of trains to six miles an hour within the corporate limits is proper evidence to go to the jury on the question of negligence, and that a failure to discharge the duty imposed by ordinance may be considered by the jury in determining whether the railroad company was guilty of negligence. In view of the general and well established rule, and in view of the other cases on the subject, and also in view of the fact that the opinion in *Omaha, N. & B. H. R. Co. v. O'Donnell, supra,* was written by the same judge who wrote the opinion in *Union P. R. Co. v. Rassmussen,* we must conclude that the last cited case does not correctly state the law, in so far as it approves the instruction to the effect that a violation of the ordinance would raise a presumption of negligence. We conclude, therefore, that the district court erred in stating to the jury that the railroad company was liable as a matter of law, if the injury resulted from a failure to sound the signals, and that the court should not have gone further than to have instructed the jury that they might infer negligence from that fact.

As to the measure of damages, the court instructed the jury that if they found for the plaintiff, his damages should be assessed "in the reasonable market value of the property at the time either destroyed or injured, and afterwards taken into its possession by the defendant company," together with interest. This instruction assumed a state of facts not borne out by the evidence. The plaintiff's manager refused to take away the living mule and the remnants of the harness and wagon, whereupon the station agent caused the mule to be cared for, and the two collars, which seem to have been the only portion of the harness left in-

tact, to be stored at a livery stable.   The plaintiff afterwards
obtained these collars.   The plain inference from the evi-
dence is that the retention of the mule by the railroad
company was due solely to the plaintiff's refusal to receive
it into his possession.   Had the proof shown that the prop-
erty was entirely destroyed, or had it shown without con-
tradiction that the railroad company converted what was
not destroyed to its own use, the instruction would have
been correct.   But it has often been decided that one who
has been injured by the negligence of another must exercise
reasonable precautions to render the injury as light as pos-
sible, and that he cannot recover for increased damages due
to his own negligence.   The company cannot be charged
as for a total destruction of the property merely because the
plaintiff elected not to retain such portion as was not de-
stroyed.   The measure of damages under the evidence in
this case was the difference between the value of the prop-
erty immediately before its injury and its value thereafter.

REVERSED AND REMANDED.