### REYNOLDS v. GREAT NORTHERN RY. CO.

(Circuit Court of Appeals, Eighth Circuit. August 19, 1895.)

#### No. 548.

1. CONTRIBUTORY NEGLIGENCE.

On a clear winter night plaintiff was driving, at a gentle trot, along a highway, which ran parallel with defendant's railroad track, and about 12 feet therefrom, on an open prairie, across which an approaching train could be seen at a distance of a mile or more. Plaintiff knew that a train was soon to approach from behind him on the railroad, and that his horse, though gentle, would require some care in management when the train passed him; but, though so muffled in a coat to protect him from the cold that he could not hear easily, he did not look for the train, and when it approached him his team collided with it, his horse was killed, and his wagon broken. *Held*, that it was not error to direct a verdict for the defendant on the ground of plaintiff's contributory negligence.

2. RAILROAD COMPANIES — DUTY TO GIVE SIGNALS AT CROSSINGS — NORTH DAKOTA STATUTE.

*Held*, further, that the defendant railroad company was not required by the North Dakota statute (Comp. Laws 1887, § 3016), requiring a bell to be rung or whistle sounded when any railroad shall cross "any other road or street," to give these signals at a private crossing, built to give access from a slaughterhouse to the highway, but not itself on any highway, though on a section line, which might, under a statute, be opened as a road by the board of supervisors.

3. SAME.

A statute which requires railroad companies to give a warning signal of the approach of trains to their crossings of a road or street imposes no duty to give such warning to those who have not lately used, who are not using, and who do not intend to use, the crossing; and such parties cannot recover of the railroad companies for a failure to give the warning.

4. SAME—FENCING TRACK.

Where there is no statute requiring railroad tracks to be fenced, it is not error, in an action against a railroad company for damages arising from a collision, to exclude evidence that the track was unfenced.

5. EVIDENCE—CROSS-EXAMINATION.

When a witness has testified on direct examination that he knows who put in a railroad crossing, and when it was put in, it is proper, in cross-examination, to ask him how it came to be put in.

In Error to the Circuit Court of the United States for the District of North Dakota.

This was an action by B. P. Reynolds against the Great Northern Railway Company for damages for alleged negligence. Upon the trial in the circuit court a verdict was directed for the defendant. Plaintiff brings error. Affirmed.

Taylor Crum (A. G. Hanson, on the brief), for plaintiff in error.

W. E. Dodge, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. Between 6 and 7 o'clock on a clear night in February, 1894, B. P. Reynolds, the plaintiff in error, was driving along a public road which runs over a level territory parallel with and 12 feet distant from the railroad of the Great Northern Railway Company, the defendant in error, when his horse and sleigh went against a train, which was coming along the railroad from his rear, and he was injured, his sleigh was broken, and his horse was killed. He sued the defendant in error for negligence. The company denied negligence on its own part, and alleged that the carelessness of the plaintiff in error caused the injury. At the close of the evidence for the plaintiff the court directed a verdict for the company, and this writ of error challenges the judgment upon that verdict.

The facts are undisputed, and they are these: The railroad of the defendant in error runs northwesterly from Fargo, in North Dakota. About half a mile northwest of Fargo, on this railroad, is the Standard Oil station. A little more than a mile northwesterly of the oil station, and on the east side of the track, stands the private slaughterhouse of one Moulton. In the summer of 1893, Moulton requested the defendant in error to put a crossing opposite his slaughterhouse, so that he could reach the public highway on the west side of the track, and it consented. Thereupon he graded the crossing, and the section men of the company planked it. This crossing was not on any traveled road. It extended only from the public road on the west side of the track to the doors of the slaughterhouse of Mr. Moulton, and it had never been opened, or laid out, or worked, or maintained by public authority. It was, however, on a section line, and people who had occasion to cross the railroad at that place had sometimes driven over it. The statutes of North Dakota required the railroad company to ring its bell or sound its whistle at a distance of at least 80 rods from its crossing of "any other road or street." And the plaintiff claimed that the company was negligent, because it gave no such signal of the approach of its train to Moulton's crossing. The defendant never had rung its bell or sounded its whistle for this crossing, and it did not do so on the night of the accident. The public road from the oil station to this crossing ran along the west side of the railroad, parallel to, and about 10 or 12 feet distant from, it. The plaintiff in error had lived on a farm about seven miles northwest from Fargo, and on the west side of the railroad, for three years, and had frequently passed over this road, and was familiar with its location and character. He was driving home from Fargo, along this road, and was about 10 rods southeasterly of Moulton's crossing when the accident occurred. He did not intend to cross the railroad, or to·

use the crossing in any way. The night was clear and cold. The mercury stood at zero. The ground was covered with snow. The two roads extended from the oil station to Moulton's crossing over a prairie without an obstruction to the view, and the plaintiff could have seen the coming engine, with its bright headlight, the distance of a mile from the place of the accident, if he had looked. He knew that a train passed up the railroad northwesterly every evening, but did not know at exactly what time it passed. He looked back towards Fargo, to see if it was coming, when he was about 40 rods northwesterly from the oil station, but he never looked again until he was struck by the train. He was driving on a gentle trot a manageable horse that was liable to be a little frightened by a moving train, and he testified that he was listening for the company to sound its whistle or ring its bell for Moulton's crossing, so as to be prepared for the train. The wind came from the north. He wore a buffalo coat. Its collar was turned up about his ears, and he never heard the roar of the approaching train until it struck him.

Was the charge of the court below to return a verdict for the defendant in error upon this state of facts erroneous? The rules of law by which this question must be answered are: (1) In order to maintain an action for negligence, where the injury was not wantonly, maliciously, or intentionally inflicted, it must appear that the negligence of the defendant was the proximate cause of the injury, and it must not appear that the negligence of the plaintiff contributed to that injury. (2) Where a diligent use of the senses by the plaintiff would have avoided a known or apprehended danger, a failure to use them is, under ordinary circumstances, contributory negligence, and should be so declared by the court. (3) It is the duty of the trial court at the close of the evidence to direct a verdict for the party who is clearly entitled to recover, where it would be its duty to set aside a verdict in favor of his opponent if one were rendered. Railroad Co. v. Houston, 95 U. S. 697; Schofield v. Railway Co., 114 U. S. 615, 5 Sup. Ct. 1125; Aerkfetz v. Humphreys, 145 U. S. 418, 420, 12 Sup. Ct. 835; Railway Co. v. Davis, 3 C. C. A. 429, 53 Fed. 61; Railway Co. v. Moseley, 6 C. C. A. 641, 57 Fed. 921; Donaldson v. Railway Co., 21 Minn. 293; Brown v. Railway Co., 22 Minn. 165; Smith v. Railway Co., 26 Minn. 419, 4 N. W. 782; Lenix v. Railway Co., 76 Mo. 86; Powell v. Railway Co., 76 Mo. 80; Gowen v. Harley, 6 C. C. A. 190, 56 Fed. 973, 980, and cases cited.

Conceding for the moment, but not deciding, that it was the duty of the defendant to give the statutory signal for Moulton's crossing, do not the facts of this case conclusively show that the plaintiff was himself guilty of contributory negligence? The question here is not whether the negligence of the defendant or that of the plaintiff was the more proximate cause of the injury, but whether or not the plaintiff's negligence contributed to it. In Railroad Co. v. Houston, 95 U. S. 697, 702, Mr. Justice Field, in delivering the opinion of the supreme court in a case in which a woman had been killed while crossing a railroad, said:

"The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordi-

nary precautions for her safety. Negligence of the company's employés in these particulars was no excuse for negligence on her part. She was bound to listen and to look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger." Schofield v. Railroad Co , 114 U. S 615, 5 Sup. Ct. 1125; McGrath v. Railroad Co., 59 N. Y. 469; Rodrian v. Railroad Co. (N. Y. App.) 26 N. E. 741.

The danger to the plaintiff from the coming train was from his possible failure to manage his frightened horse and keep him in the road, not from the possibility that the train would cross the road upon which he was traveling. He testified that his horse was gentle and manageable in the presence of moving trains, but that he might be a little frightened by one, and that for this reason he listened to hear the bell or whistle, that he might be prepared for the coming of the train he expected, and thus control his horse. In other words, he knew he was in a dangerous place, and the company did not, and he relied upon the bell or whistle of the company to make him careful to manage his horse and keep him in the public road, where he belonged. There were, however, two methods perfectly open to him that would have protected him against this danger, regardless of the statutory signals. One was to drive his horse with tight reins, and manage him as carefully as if the train was constantly passing, as long as he continued to drive along within 12 feet of the railroad track. The other was to use his eyes to look back often enough to see the bright headlight of a train before it could overtake him. The view from the place of the accident southwesterly was unobstructed for more than a mile, and to look was to see the coming train. The facts that the temperature was at zero, that he had turned the collar of his buffalo coat up against his ears, that he was sitting in a sleigh, that the wind came from the north, and that he never heard the roar of the approaching train until it struck him, show that he had made his sense of hearing practically useless. This made the duty of the diligent and frequent use of his eyes more imperative. Railway Co. v. Moseley, 6 C. C. A. 641, 645, 57 Fed. 921; Mynning v. Railroad Co. (Mich.) 26 N. W. 514. It certainly is not a diligent use of the senses, when danger is apprehended from a train coming from the rear, to cover the ears with a buffalo coat, and steadily look in a direction opposite to that from which the train is expected, while a horse goes three-quarters of a mile on a gentle trot. The ordinary use of his eyes would have informed the plaintiff of the coming of this train, and would have enabled him to avoid the danger. Moreover, after he had closed his ears to the roar of the train coming from the rear by the collar of his buffalo coat, and had concluded not to look back while he was traveling three-quarters of a mile, it was certainly not the exercise of ordinary care to drive so carelessly that a horse that was gentle and manageable in the presence of moving trains would draw him onto the railroad or against the train as it passed. If he would not look for, and so dressed himself that he could not hear, the train he expected to come from his rear, ordinary prudence required him to drive his gentle horse so carefully that he would be prepared for its coming at any time. The evidence of contributory negligence was conclusive.

There is another reason why the judgment of the court below should not be reversed. This record does not tend to prove any negligence on the part of the railroad company. The fact that it failed to give the statutory signal for Moulton's crossing is the only evidence of its negligence in this record. It owed no duty to ring its bell or sound its whistle because the plaintiff was driving along the public road, unless that duty was imposed upon it by this statute. In the absence of the statute, it had as much right to use its railroad for its trains without notice to the plaintiff as the plaintiff had to use the public road without notice to it. If there was any difference between them, the heavier burden of care was upon the plaintiff, for he knew that he was there, and in danger, and the company had no such knowledge. Hence the company violated no duty to the plaintiff which the statutes did not impose. Did the statutes require the whistle to be sounded or the bell to be rung for Moulton's crossing? Section 3014 of the Compiled Laws of Dakota of 1887 provides that every railroad corporation operating a line of road within that state shall erect suitable signs of caution at each crossing of its road with a public highway. Section 3016 of these statutes requires that a bell shall be rung or a whistle sounded at the distance of 80 rods from the place where any railroad shall cross any other road or street. Section 3017 provides that when any person owns land on both sides of any railroad the corporation owning such railroad shall, when required, make and keep in repair one causeway or other safe and adequate means of crossing the same. The question is, was Moulton's crossing, at the place where this railroad passed it, "any other road or street," within the meaning of section 3016, supra? Article 2, c. 12, of the Political Code of North Dakota, which treats of public highways and roads, provides that all public roads and highways that have been open and in use as such, and included in a road district in the town in which they are situated, for 20 years preceding March 9, 1883, shall be public roads or highways (section 1261, Comp. Laws Dak. 1887); that every road laid out by order of proper authorities, as provided in this article, from which no appeal has been taken, shall be a public highway (section 1262, Id.); and that the congressional section lines shall be considered public roads, to be opened to the width of two rods on each side of said section lines upon order of the board of supervisors. Section 1264 provides that the supervisors in the several towns shall "have the care and superintendence of the roads and bridges therein." Section 1266 provides that the overseers of highways in each town "shall repair and keep in order the roads within their respective districts." Section 1271 provides for a road tax. Section 1272 provides that the supervisors shall assess a road tax on all real estate and personal property. In section 1277 the overseers of highways are called "road overseers." Now, it is certain that Moulton's crossing was not a public highway. It had not been used 20 years. It had not been laid out by the proper authorities. It had not been opened on the section line by order of the board of supervisors of the township. It was a mere private crossing, put in at the request of Moulton, to enable him to reach his slaughterhouse from the public road, which was on the opposite side

of the railroad. In the instances to which we have referred the legislature of Dakota has repeatedly used the word "road" as synonymous with the term "public highway." The presumption is that they used it in the same sense in section 3016. This presumption is strengthened by the fact that it borders upon absurdity to suppose that the legislature intended to require the railroad companies to give this statutory signal 80 rods on either side of every farm crossing or way from a private dwelling or business house across their roads. If such were the rule, there would be few places on the line of this railroad in the eastern part of North Dakota where the bell or whistle would not be required to be sounding. We do not think this was the intention of the legislature, and, as Moulton's crossing was not a public highway, the railroad company was, in our opinion, guilty of no negligence in its failure to give the statutory signal at that crossing.

Our conclusion is that the term "other road," in section 3016 of the Compiled Statutes of Dakota, 1887, refers to a public highway as defined by the statutes of that state, and that it has no reference to farm ways and private wagon roads that cross the railroad. Sather v. Railroad Co. (Minn.) 41 N. W. 458; Greeley v. Railway Co., 33 Minn. 137, 22 N. W. 179; Brooks v. Railroad Co., 13 Barb. 597; Cook v. Railroad Co., 36 Wis. 45; Railroad Co. v. Long, 6 Am. & Eng. R. Cas. 254; Railroad Co. v. Willey (Mich.) 10 N. W. 120.

Moreover, even if Moulton's crossing had been upon a road or street, the failure of the company to give the statutory warning for it would not have charged it with the neglect of any duty it owed to the plaintiff. Failure to discharge a duty to the plaintiff, and resulting injury to him, are indispensable elements of actionable negligence. Where there has been no such failure, there has been no wrong, and therefore there is no remedy. In the absence of a statute which requires warning of a coming train at a crossing, the railway company owes to a workman in an adjacent field, to a domestic in a neighboring house, or to a traveler on a parallel road who has not crossed, and does not intend to cross or enter upon, the railroad no duty to signal the approach of its trains. The measure of the reciprocal rights and duties of these parties and the railroad is not changed or affected by the enactment of such a statute. The evil it is intended to remedy did not threaten them. The warning it requires was not provided for their benefit. The object of such a statute is to warn persons in the vicinity of the crossing, who have just crossed, who are in the act of crossing, and who intend to cross the railroad upon it, of the approach of the train, to the end that collisions and the danger of fright and injury from the use of the crossing may be avoided. Accordingly such a statute imposes upon the railroad companies a duty to warn such persons, but it imposes upon them no duty to warn others. Consequently, a failure to give the warning becomes a neglect of statutory duty, and, if injury results, raises a cause of action in favor of the former, but not in favor of the latter. This is a just and reasonable rule, because the crossing was a menace of danger to the former, but not to the latter. Its existence and use by the company neither increases nor diminishes the danger of the traveler on

a parallel road, who has not used, is not using, and does not intend to use it; and hence he does not fall within the class of those for whom such a statute imposes upon railroad companies the duty of giving a warning of the approach of their trains to the crossing. Our conclusion is that a statute which requires railroad companies to give a warning signal of the approach of trains to their crossing of a road or street imposes no duty to give such warning to those who have not lately used, who are not using, and who do not intend to use the crossing, and such parties cannot recover of the railroad companies for a failure to give the warning. The purpose of such a statute is to warn those who have lately used, those who are using, and those who are about to use the crossing. It imposes a duty upon the railroad company to give to these persons the statutory warning, and a failure to give it is a neglect of duty to them, for which they alone may recover if injury results. These views are supported by the great weight of authority. Pike v. Railroad Co., 39 Fed. 754; Bell v. Railroad Co., 72 Mo. 50, 58; Evans v. Railroad Co., 62 Mo. 49, 57, 58; Rohback v. Railroad Co., 43 Mo. 187; Elwood v. Railway Co., 4 Hun, 808; O'Donnell v. Railway Co., 6 R. I. 211, 216; Railway Co. v. Feathers, 10 Lea, 103, 105; Railway Co. v. Payne, 29 Kan. 166, opinion by Judge Horton, concurred in by Mr. Justice Brewer; Railway Co. v. Pierce, 33 Kan. 61, 64, 5 Pac. 378; Clark v. Railway Co. (Kan. Sup.) 11 Pac. 134, 136; Gorris v. Scott, L. R. 9 Exch. 125.

It is assigned as error that the court below refused to permit the plaintiff to testify whether or not there was any fence along the track of the railroad company at the place of the accident. It is not claimed that there is any statute in the state of North Dakota requiring a railway company to fence its track, and we are unable to perceive how the fact that it was or was not fenced could affect the right of the plaintiff to recover under the undisputed facts of this case.

It is assigned as error that the court permitted the witness Moulton to testify upon cross-examination "how the crossing opposite his slaughterhouse came to be put in." There was no error in this ruling. He had testified in chief that he knew who put the crossing in, and when it was put in, and it was certainly fair cross-examination to ask him how it came to be put in.

The judgment below must be affirmed, and it is so ordered.