ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS v.
R. KILMAN.

Decided April 15, 1905.

**1.—Railroads—Signals at Crossings.**

One who is traveling along a highway adjacent to and parallel with a railroad track is within the protection of the statute requiring signals to be given by whistle or bell for public crossings, and a failure to give such signals may be negligence as to him, although he had not used and was not intending to use the crossing. Rev. Stats., art. 4507.

**2.—Same—Forbearing to Whistle—Discovered Peril.**

Where the engineer of the train saw that plaintiff's horse would be frightened by the blowing of the whistle and plaintiff probably injured, and he could have desisted from blowing just then consistently with his duties and without damage to the railroad company, his failure to so desist might be negligence, despite the statutory requirement.

Appeal from the District Court of Hunt. Tried below before Hon. T. D. Montrose.

*E. B. Perkins* and *Templeton, Crosby & Dinsmore,* for appellant.—The court erred in overruling the defendant's general demurrer to the plaintiff's petition, because the only negligence relied on by plaintiff is failure of defendant's servants to blow a whistle and ring the bell on approaching the crossing, and it is not alleged in the petition that plaintiff was about to use the said public road crossing, or had used it shortly before, or intended to use it, or that plaintiff was on defendant's right of way. The petition does not show that defendant owed to the plaintiff the duty to sound the whistle or ring the bell on approaching the crossing. Railway Co. v. Feathers, 10 Lea, 103; Burgher v. Railway Co., 20 S. W. Rep., 439.

*Looney & Clark,* for appellee.—The statute makes it a penal offense to neglect to blow the whistle at least eighty rods from a crossing, and declares that "the corporation operating such railway shall be liable for all damages which shall be sustained by any person by reason of such neglect." Appellee was rightfully in the public highway near the crossing, and was expecting, and had the right to expect, appellant's employes to obey the law. No good reason can be assigned why he should be denied the protection of the statute simply because he did not intend to cross the track, or why the court should not declare that to be negligence, which the law itself punishes as a crime. Rev. Stats., art. 4507; Railway v. Taff, 74 S. W. Rep., 89, and authorities cited; Railway v. Red

Cross Stock Farm, 53 S. W. Rep., 834; Railway v. Cunningham, 29 S. W. Rep., 332; Ransom v. Railway Co., 62 Wis., 178, 22 N. W. Rep., 147; Chicago, etc., Ry. Co. v. Metcalf, 44 Neb., 848, 63 N. W. Rep., 51; Lonergan v. Illinois Cent. Ry. Co., 87 Iowa, 755, 17 L. R. A., 254 (and see exhaustive note in this report); Cahill v. Cincinnati, etc., Ry. Co., 18 S. W. Rep., 2; Ross v. Railway, 37 L. R. A., 591.

BOOKHOUT, Associate Justice.—R. Kilman brought this suit against the St. Louis Southwestern Railway Company of Texas to recover damages on account of personal injuries occasioned by the horse he was driving taking fright at a passing train. The defendant pleaded the general issue, contributory negligence and assumed risk. There was a jury trial, which resulted in a judgment for the plaintiff for $350. The defendant's motions for new trial were overruled; wherefore it perfected this appeal.

*Conclusions of fact.*—Appellee was injured by his horse becoming frightened at one of appellant's trains on March 31, 1902, just east of Neylandville, in Hunt County, while on his way home over the Greenville and Commerce public road. This road and the railroad run about east and west, and nearly parallel where the accident happened, the wagon road being north of the railroad, adjacent to its right of way. There is a road extending from the Greenville and Commerce road south and crossing the railroad track. This crossing is called in the evidence "the store crossing." East of this crossing 784 feet another road extending from the main road runs south, crossing the railroad, to the school-house and church, and is called "the school-house crossing." East of this crossing 241 feet is a whistling post, and east of this about a quarter of a mile is another whistling post. About 320 feet east of the school-house crossing the Greenville and Commerce road turns north, at right angles with the railroad. Just east of this turn is a skirt of timber extending to the railroad right of way. The appellee was in his buggy, driving a single horse south over this road, and as he approached the railroad track he stopped and listened for a train. Not hearing any, he turned west, not intending to cross the railroad track. When near the school-house crossing he again looked and listened to see if a train was approaching. He was told, by one standing near, that a train was approaching from the east. Not having time to drive out of the way, he got out of his buggy and went to the horse's head and took hold of the bridle to hold him. The horse took fright at the noise of appellant's whistle and approaching train, and threw appellee to the ground and injured him, and broke the buggy and harness. He was about fifteen feet west of the school-house crossing, and in the Greenville and Commerce road, at the time. The evidence is conflicting as to whether or not the persons operating the train sounded the whistle at the whistling post farthest east for the school-house crossing. The evidence is also conflicting as to whether the engineer, after discovering appellee's peril, sounded the whistle at a time when it could only have the effect of frightening appellee's horse. The verdict comprehends a finding that the statutory signal was not given for the school-house crossing, and that, after the engineer discovered the appellee in peril, he sounded the

whistle and gave a danger signal for stock, causing appellee's horse to take fright, and proximately causing the injuries complained of. In deference to the verdict we so find, and that, thereby, appellee sustained damages in the amount of the verdict. We find appellee was not guilty of contributory negligence.

*Conclusions of law.*—1. It is contended that the appellant did not owe to appellee the duty to give the statutory signal for the school-house crossing by sounding the whistle at least eighty rods from the crossing, for the reason he had not used the crossing, and was not intending to use it. In other words, that the statute only applies to those on the crossing or about to make use of the crossing. This contention was raised by a general demurrer to the petition, which was overruled; by the refusal of special charges embracing the contention, and by the main charge, which gives the reverse of the proposition contended for. The statute provides that: "A bell of at least thirty pounds weight, and a steam whistle, shall be placed upon each locomotive engine, and the whistle shall be blown and the bell rung at the distance of at least eighty rods from the place where the railroad shall cross any public road or street, and such bell shall be kept ringing until it shall have crossed such public road or stopped." It is made a penal offense, punishable by fine, for any engineer having charge of such engine to neglect to comply with this provision; and the statute further provides that "the corporation operating such railway shall be liable for all damages which shall be sustained by any person by reason of any such neglect." (Rev. Stats., art. 4507.) Was appellee within the protection of this statute? It was held by the Court of Civil Appeals for the Second District that, where a section hand, returning from work on a hand car, and rightfully upon the track, was run onto by a train and injured within several hundred yards of a railroad crossing, and near enough to have the benefit of the statutory signal, the company owed him the duty to give the statutory signal for the crossing, and if, by its failure to do so, the section hand was injured, the company was liable. (Railway Co. v. Taff, 31 Texas Civ. App., 657, 74 S. W. Rep., 89.) And it is held by the Court of Civil Appeals for the Third District that the statute applies where animals are injured upon a crossing as the result of a failure to give the statutory signal. (Railway Co. v. Red Cross Stock Farm, 22 Texas Civ. App., 114, 53 S. W. Rep., 834.)

The exact question here involved was before the Supreme Court of Wisconsin in the case of Ransom v. Chicago, St. Paul, Minneapolis & Omaha Railway Co. (62 Wis., 178). In that case plaintiff's wife, accompanied by their two minor children, was driving a horse of plaintiff's hitched to a buggy over a public road running parallel with the railroad. They were traveling east towards a railway crossing, not, however, intending to make use of the crossing, and when within ten or fifteen rods of the crossing, and near the railway track, a train of cars from the west, running rapidly, without notice or warning, emerged from a cut, and so frightened the horse that it ran away, overturning the buggy, killing plaintiff's wife and injuring his children. It was shown that the horse was gentle. It was held that the railway company owed the duty to plaintiff's wife and children to blow the engine whistle and ring

the bell for the crossing, and the opinion placed the railroad's liability solely upon negligence in its failure to perform its statutory duty. To the same effect is the holding of the Supreme Court of Iowa in Lonergan v. Illinois Central Ry. Co. (87 Iowa, 755, 17 L. R. A., 254); and the Supreme Court of Nebraska, in Railway Co. v. Metcalf (44 Neb., 848, 63 N. W. Rep., 51). (See, also, Georgia R. R. Co. v. Williams, 74 Ga., 723; Cahill v. Cincinnati, etc., Ry. Co., 18 S. W. Rep., 2; Wakefield v. Connecticut, etc., R. R. Co., 37 Vt., 330, 86 Am. Dec., 719; Western & Atlantic R. R. Co. v. Jones, 65 Ga., 631, 8 Am. & Eng. Ry. Cases, 267; Pennsylvania R. R. Co. v. Barnett, 59 Pa. St., 259.)

The statute does not exclude from its protection persons traveling along a public highway at or near a railroad crossing. It is not subject to the restricted construction, contended for by appellant, that it only applies to persons who are about to use the crossing, or have just made use of it. The object of the statute was twofold: (1) to guard against actual collision at the crossing; and (2) that of damage by the frightening of teams traveling upon the public highway near the crossing. (People v. New York Central R. R. Co., 25 Barb., 199; Ransom v. Railway, supra.) In our opinion, one traveling along a public highway near a railway crossing, as was appellee, is within the protection of this statute.

2. It is insisted that the evidence did not authorize a charge upon discovered peril. The engineer says he might have discovered the horse as soon as he got around the skirt of timber; that he did discover him when he "got to the whistling post for the crossing where the old man was lying." The engineer actually saw appellee in peril when 256 feet and the width of the crossing (which is not shown) from him, and could have seen him, had he looked, from where the road turns north, about 180 yards away. The whistling post for the store crossing was located about where the evidence tends to show the whistle was sounded. At that time the engineer saw the appellee in peril. Even though there was a reason for the blowing of the whistle, still, if the engineer saw that appellee's horse would be frightened, and appellee probably injured, and he could desist from blowing the whistle consistently with his duties, and without damage to the railroad company, it became his duty to refrain for a reasonable time from blowing the whistle, and a failure to so desist might properly be regarded by the jury as negligence. (Railway Co. v. Yarborough, 39 S. W. Rep., 1096; Railway Co. v. Milner, 28 Texas Civ. App., 86, 66 S. W. Rep., 574.)

As stated in the case last cited: "Just what should be done or not done must be controlled by the particular circumstances surrounding each case. If the operators saw that the giving the signal was liable to frighten plaintiff's horse, and thereby cause injury, then they should have refrained from giving it, provided they could have, by the proper operation of the train for the safety of those on board the train, protected from harm those at the crossing." The pleading and evidence raised this issue of negligence, and it was properly submitted to the jury.

3. Complaint is made of the court's action in overruling the motion for a new trial, based upon the ground that the evidence was not sufficient to support the verdict. As stated, there was a sharp conflict in

the evidence on the issue as to whether the signals for the crossing were given and on the issue of discovered peril. The jury settled the conflict in favor of appellee, and there is evidence to justify their verdict. In this condition of the record we are not at liberty to disturb the verdict.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*